Earl Bilyeu, et al., Plaintiffs-Appellants, v. Grace Plant and "Unknown Owners," Defendants-Appellees.

Gen. No. 66–19.

Fifth District.

September 20, 1966.

John R. Sprague and Ron Niemann, of Belleville, for appellants.

Ralph A. Vandever, of Hillsboro, for appellee.

GOLDENHERSH, P. J.

Plaintiffs, Earl Bilyeu, Perry Bilyeu, and Elizabeth Thomas, appeal from the judgment entered by the Circuit Court of Bond County, denying to plaintiffs any of the relief sought in their amended complaint.

Plaintiffs and defendant are the surviving brothers and sisters, and the only heirs, of Harry M. Bilyeu, deceased, who died on July 2, 1959.

Plaintiffs' amended complaint is in three counts. In Count I plaintiffs allege that in 1912 Harry M. Bilyeu

took record title to certain described real estate, that a mortgage on said real estate was foreclosed, that the receiver for a Joint Stock Land Bank conveyed the real estate to Frank Doll and Chris Doll by deed dated July 19, 1937, and recorded on August 12, 1937; that the Dolls, and the spouse of one of them, conveyed the real estate to defendant, Grace Plant, by warranty deed dated July 30, 1937, and recorded August 12, 1937, that defendant held title to said real estate under a resulting trust for her brother, Harry M. Bilyeu, because he furnished the consideration for the conveyance with the intent that the resulting trust arise from the transaction; that since the death of Harry M. Bilyeu, and in violation of the resulting trust, she claims complete and sole ownership of the real estate, that during the entire period that defendant has held apparent record title to the real estate, the said Harry M. Bilyeu remained in possession thereof, that because of the resulting trust, the defendant's interest in the real estate is apparent and not real.

As to Count I, plaintiffs pray that the court decree that defendant held record title in trust for Harry M. Bilyeu, that the plaintiffs and defendant be decreed to be the owners of the real estate, and that defendant have no right, title or interest therein superior to that of plaintiffs.

In Count II, plaintiffs repeat many of the above allegations, and allege further that defendant abused a confidential or fiduciary relationship, and pray that the court decree that she held title by virtue of a constructive trust.

In Count III, plaintiffs allege that Harry M. Bilyeu was in continuous, open, notorious possession of the real estate for more than 20 years, and while in such continuous, open, notorious possession, under color of title, paid taxes thereon for more than 7 years, and pray that the court

113

■

decree that Harry M. Bilyeu was vested with title by virtue of such adverse possession.

The answer admits many of the allegations, denies that Harry M. Bilyeu furnished the consideration for the conveyance to defendant, denies the creation of a resulting trust, denies a fiduciary relationship or any abuse thereof, admits Harry M. Bilyeu was in possession of the real estate but states that it was not adverse to defendant, and was with her permission.

The parties stipulated that Harry M. Bilyeu acquired title to the real estate in 1912, that a mortgage on the real estate was foreclosed, that on the dates, and by means of the instruments, described in the amended complaint, it was conveyed to the Dolls, and by the Dolls to defendant, that the real estate taxes for the years 1937 through 1957 were paid by Harry M. Bilyeu, that income tax returns filed by Harry M. Bilyeu show he reported income from the real estate until his death, that in 1958, Harry M. Bilyeu paid the premium for fire and extended coverage on the house, in 1956 paid for corn insurance, and in 1957 paid for seed.

Chris Doll, called by plaintiffs, testified that Frank Doll was deceased, that he had knowledge of the subject real estate since 1912, and had known Harry M. Bilyeu since 1920, that Harry M. Bilyeu lived on the farm since at least 1920, that the total acreage of the farm occupied by Harry M. Bilyeu was 170 acres, of which 140 acres were in cultivation, that from 1920 until 1937, he and his brother were tenants on the farm, that a mortgage on the farm was foreclosed, that he and his brother, after discussion with Harry M. Bilyeu, bought the farm from the receiver for the Joint Stock Land Bank, that it was their intention, as discussed with Harry M. Bilyeu, to keep 90 acres, that Harry M. Bilyeu told the Dolls to convey the balance of the farm to defendant, that his de-

114

ceased brother made the financial arrangements and he did not know whether defendant gave his brother any money, that she (the defendant) gave him no money, that after the conveyance to defendant, Harry M. Bilyeu continued to occupy the house on the farm until his death; that Harry M. Bilyeu, or his employees farmed the land, that part of it was fenced, and that Harry M. Bilyeu maintained and repaired the improvements. He and his brother were paid $2,500, but he had no knowledge as to where Harry M. Bilyeu obtained the money. When asked whether he received any money, Mr. Doll answered, "No, that arrangement was made at the bank."

Guy Gillespie, Charles McClain, Henry Hollar and Florence Hollar, testified that Harry M. Bilyeu was in continuous possession of, and farmed the land, from 1920 to the time of his death.

Irving Iberg testified that since 1958, the property had been assessed for real estate taxes, in the name of defendant, that from 1937 to 1957, the land was assessed in the name of Harry M. Bilyeu.

George Clark testified that he was manager of, and had been bookkeeper for, a grain elevator, that payments for grain grown on the farm were divided two-thirds to a tenant and one-third to Harry M. Bilyeu.

Charles Woolsey testified that he had known Harry M. Bilyeu since before 1920, that Harry M. Bilyeu had always lived on the farm, that he frequently worked for him, that Harry M. Bilyeu had always paid him, that once when he repaired some windstorm damage, Harry M. Bilyeu told him he was going to send the bill to the insurance company.

Ralph Christian, an insurance salesman, testified that he sold Harry M. Bilyeu fire, windstorm and extended coverage insurance on the house and barn, and that losses were payable to Harry M. Bilyeu.

Ward Reynolds testified that he was formerly County Superintendent of Highways, that he had known Harry M. Bilyeu since 1938, that he had lived on the farm continuously from that time, and that Harry M. Bilyeu had executed a release which was marked for identification, offered, and admitted in evidence. The release grants permission to a road contractor to "deposit surplus trees and stumps" on the land. He also identified a letter written by him to Harry M. Bilyeu regarding the removal of some fences on the farm.

On cross-examination, Mr. Reynolds identified a document, not in evidence, described as a dedication of a right-of-way for highway purposes executed in 1952 by Harry M. Bilyeu, and an easement, executed on the same date, by defendant and her husband. The easement, not in evidence, is described by the witness as pertaining to land in Section 4.

An inventory of the estate of Harry M. Bilyeu, identified, offered and admitted in evidence, lists lands in Section 3, but none in Section 4. The real estate involved in this case is described as being in Section 4.

N. B. Schaeffer testified that some time after 1953 he sold fire and other insurance to Harry M. Bilyeu covering the buildings on the farm, that the policy named defendant as owner of the property, that Harry M. Bilyeu paid the premiums, and a loss was paid to him. He stated that Harry M. Bilyeu and defendant were always friendly in the years that he knew them, that shortly before Harry M. Bilyeu's death, he was ill and unable to care for himself, and during that period lived with defendant.

Over defendant's objection, the court admitted in evidence a warranty deed dated July 28, 1937, naming defendant and her husband as grantors, and Harry M. Bilyeu, as grantee, conveying the property here involved. It was stipulated by the parties that the signature on

the deed is that of defendant's husband. It is not signed by defendant, is not acknowledged, is not recorded, and there is no testimony as to when or by whom it was prepared, or in whose possession it has been since its preparation.

At the close of plaintiffs' case, defendant moved for judgment on all three counts, the court allowed the motion, and entered judgment in favor of defendant.

Plaintiffs contend that the evidence adduced made a prima facie case for plaintiffs, and the court erred in allowing defendant's motion and entering judgment for defendant.

Section 64(4) of the Civil Practice Act (c 110, § 64(4) Ill Rev Stats 1965) provides for motions for judgment or decree at the close of the plaintiff's case in equity and nonjury law cases. It provides that in ruling on the motion the court shall weigh the evidence, and if the ruling on the motion is favorable, enter judgment for the defendant or a decree dismissing the action. In Banks v. Gregory, 16 Ill2d 227, 157 NE2d 12, at page 231, the Supreme Court said: "The motion of the defendant at the close of the plaintiff's case was a procedural means of submitting the whole case to the court for a determination on the merits. In ruling on the motion the court was required to weigh the evidence offered on the part of the plaintiff." In McDonald v. Neale, 35 Ill App2d 140, 182 NE2d 366, the Appellate Court for the First District, in discussing the statute as amended in 1955, at page 146, said: "This change in the Civil Practice Act, expressly for the purpose of expediting trials, permits the trial judge, at the close of plaintiff's case, to evaluate the evidence and determine the credibility of witnesses. Under such circumstances the trial judge must decide whether the inferences and conclusions adduced by him

from the evidence result in a prima facie case before ruling on the motion."

On appeal, the reviewing court must examine the evidence, and in the light of these holdings, determine whether the trial court, after weighing the evidence, erred in deciding that plaintiffs failed to make a prima facie case.

We shall first consider the evidence purporting to show the creation of a resulting trust. The only evidence with respect to payment of the consideration for the conveyance to defendant, is the testimony of Chris Doll. Plaintiffs contend that this testimony establishes that Harry M. Bilyeu paid the money received by the Dolls, and that an additional consideration was his foregoing the right to redeem the land after foreclosure.

In Kohlhaas v. Smith, 408 Ill 535, 97 NE2d 774, at page 538, the Supreme Court said: "A resulting trust arises by operation of law from the acts of the parties and is not based upon contract. . . . Where land is purchased with the money of one person and title taken in the name of another, and the acts of the parties establish an actual or presumed intention to create a trust, the law raises a resulting trust in favor of the person whose money was used. . . . It arises, if at all, the instant the legal title is taken and the title vests. . . . The burden of proof rests upon the party seeking to establish a resulting trust, and the evidence, to be effective for this purpose, must be clear, convincing, unequivocal and unmistakable, and must establish beyond a doubt the payment by the claimed beneficiary at the time the title was taken in the alleged trustee. . . . If the evidence is doubtful or capable of reasonable explanation upon any theory other than the existence of a trust it is insufficient."

In considering defendant's motion for judgment, and in weighing the evidence as required by section 64(4),

118

unless the trial judge could find that the plaintiffs' evidence was so clear, convincing and unequivocal as to enable him to draw the inferences and reach the conclusions necessary to a finding that there was a resulting trust, defendant's motion for judgment was properly allowed.

In reviewing a case tried without a jury, an appellate court should not disturb the findings of the trial court unless such findings are manifestly erroneous. People ex rel. Penrod v. Chicago & N. W. Ry. Co., 17 Ill2d 307, 161 NE2d 126. In determining the propriety of a trial court's ruling on a motion based on section 64(4) the same rule should apply.

Plaintiffs contend that even assuming, arguendo, that the evidence of the payment by Harry M. Bilyeu of the money consideration paid to the Dolls falls short of being clear, convincing and unequivocal, the evidence shows an additional consideration, in that Harry M. Bilyeu agreed not to exercise his right of redemption in order that the Dolls could purchase the land from the receiver and convey the portion here involved, to the defendant. This contention is without merit for the reason that the record is barren of evidence as to when the decree of foreclosure was entered, or whether the transaction between the Joint Stock Land Bank receiver and the Dolls took place within the redemption period.

After a careful examination of the evidence seeking to establish a resulting trust, we cannot say that the trial court erred in allowing the motion for judgment.

We next consider plaintiffs' contention that the evidence makes a prima facie case from which the trial court could find that the transaction created a constructive trust. In Kapraun v. Kapraun, 12 Ill2d 348, 146 NE2d 7, at page 350, the Supreme Court said: "Constructive trusts are of two classes: one, where there is a fiduciary or confidential relationship and the subsequent

119

abuse of that confidence; and the other, where actual fraud is a basis for raising a constructive trust."

The fact that Harry M. Bilyeu and defendant were brother and sister does not of itself establish a fiduciary or confidential relationship. Scherman v. Scherman, 395 Ill 574, 577, 71 NE2d 16. Where the relationship does not exist as a matter of law, it must be proved by clear· and convincing evidence in order to establish a basis for raising a constructive trust. Kester v. Crilly, 405 Ill 425, 432, 91 NE2d 419; Kapraun v. Kapraun, 12 Ill2d 348, 352, 146 NE2d 7. There is no evidence of fraud, and a review of the record does not enable us to say that the trial court erred in holding that the evidence fails to present a prima facie case from which he, as the trier of fact, could conclude that there was clear, convincing, strong, unequivocal evidence of a constructive trust.

In considering whether plaintiffs' evidence makes a prima facie case that title vested in Harry M. Bilyeu by reason of adverse possession for a period of more than 20 years, the record must be examined in the light of the Supreme Court's holding in Schwartz v. Piper, 4 Ill2d 488, 122 NE2d 535, wherein, at page 492, the court said: "It is well settled that the adverse possession which is required to constitute a bar to the assertion of a legal title by the owner must include these five elements: It must be (1) hostile or adverse, (2) actual, (3) visible, notorious and exclusive, (4) continuous, and (5) under claim of ownership. . . . If the record does not establish all of those conditions plaintiff cannot prevail. . . . Furthermore, the doctrine of adverse possession is to be taken strictly. It cannot be made out by implication or inference. The presumptions are all in favor of the true owner, and the proof, in order to overcome such presumptions, must be strict, clear and unequivocal." Again, we are not prepared to say that the trial court erred in

120

holding that plaintiffs failed to make a prima facie case upon which he could base the findings necessary to support a decree favorable to plaintiffs.

Finally, plaintiffs contend that Harry M. Bilyeu acquired title by possession, under color of title, adverse to defendant, accompanied by payment of taxes for a period of 7 years. The testimony of N. B. Schaeffer is to the effect that Harry M. Bilyeu, when he purchased fire insurance some time after 1953, named defendant as owner. This was within 7 years of his death, and is not consistent with plaintiffs' theory. As to the claim of color of title, there is no evidence that the deed upon which plaintiffs rely was delivered, and in the absence of proof of delivery an unacknowledged deed will not support a claim of color of title. Herrin v. McCarthy, 339 Ill 530, 171 NE 621.

For the reasons herein set forth, the judgment of the Circuit Court of Bond County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.