Mitchell Miller, et al., on Behalf of Clearview Manor, Inc., an Illinois Corporation, Plaintiffs-Appellants, v. Seymour Heller, et al., Defendants. Castle Terrace, Inc., an Illinois Corporation, Nathan Browdy, et al., Defendants-Appellees.

Gen. No. 50,712.

First District, Fourth Division.
November 3, 1967.
Rehearing denied and opinion modified February 26, 1969.

David Chaimovitz, of Chicago, for appellants.

Hoffman & Davis, and Robert A. Sprecher and Edward W. Barrett, of Chicago, for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

On August 18, 1961, plaintiffs, Mitchell Miller, Leon Lieberman, Nathan Kosoy, Burton S. Rose and Sy Sussman, on behalf of Clearview Manor, Inc., filed a complaint in chancery for an accounting and to declare in effect a constructive trust with reference to an interest in certain property. The complaint was in two counts.[1] On March

---

[1] Count I, which is not involved in this appeal and is still pending in the Circuit Court, in substance was as follows: It alleged that Heller was promoter and organizer of Clearview Manor, Inc., and that in the course of his negotiations with the plaintiffs with reference to the organization, Heller made various false representations—among others, that he was an experienced general contractor and that he would perform the general contractor's services over the construction. In return for this the investors were to receive notes totaling $55,000 from the corporation, plus 400 shares of stock each, or a total of 2,000 shares amounting to $20,000. It was further alleged that no shares of stock were ever issued or delivered. Heller also agreed that he was to pay subcontractors out of cor-

■

26, 1963, in the Circuit Court of Cook County, an order was entered dismissing Count II and the supplement and amendment thereto as against Castle Terrace, Inc., Edward Hochman, Leonard Brenner, George Rongner, Nathan Browdy and Edward Browdy, defendants (hereafter referred to as Castle defendants). The order also freed the land involved in the proceedings from lis pendens. On May 3, 1963, the plaintiffs made a motion to vacate these orders, which motion was denied. From that order this appeal is taken.[2]

In this court plaintiffs' theory is that (1) the finding and ruling of the master pertaining to a motion to dismiss must be given great weight and cannot be reversed by the chancellor if there is any evidence presented in support of plaintiffs' case, especially where, as here, the chancellor heard no evidence and the master was in a superior position to the trial court to pass on the evidence; (2) that a constructive trust arises where one party takes title to property with knowledge of the fact that he is using funds or credits belonging to another, and that such a trust, under the circumstances present in the instant case, should have been imposed upon the subject property with the Castle defendants as constructive trustees for the use and benefit of the plaintiffs.

Defendants' theory is that the chancellor, in passing on defendants' motion made at the close of plaintiffs' case under section 64(5) had the power to weigh the evidence; that the evidence submitted by plaintiffs did not establish either a resulting or constructive trust; that plaintiffs

---

porate funds; instead of that, he diverted about $60,000 of the corporate funds to his own use. Plaintiffs further allege that they were bringing the suit as individual plaintiffs on behalf of Clearview Manor, Inc., and seeking general equitable relief.

[2] The order entered in the trial court complied with section 50(2) of the Civil Practice Act (Ill Rev Stats 1961, c 110, § 50(2)), inasmuch as there was an express finding that there was no just reason for delaying enforcement or appeal.

did not establish their case by the proof required of them under the law; that the chancellor properly entered a decree in favor of Castle defendants on the evidence submitted by the plaintiffs; and that the plaintiffs' purported claim is barred by laches.

Count II of the complaint set out that on July 10, 1959, after Clearview Manor was incorporated,[3] it entered into articles of agreement to purchase certain land from Irving Berkson, and a down payment of $25,000 was made to Berkson; and that on July 29, 1960, Berkson entered into a release agreement releasing the purchaser, Clearview Manor, from any obligations under the articles of agreement. Clearview Manor also released Berkson, and Berkson was to retain as liquidated damages the $25,000 theretofore paid. The complaint also set out that on July 29, 1960, Heller induced Castle Terrace, Inc. to purchase the same land from Berkson, and Heller aided in negotiating the deal; that under the unrecorded articles of agreement for deed, Castle Terrace received a credit of $25,000 against the total price agreed on to be paid by it, and that the said credit was given by Berkson in order to give Heller an opportunity to offset the loss of $25,000 incurred by Clearview Manor by its inability to complete the purchase of land referred to, and on the specific understanding that Heller would receive an equity in the land in an amount or a percentage satisfactory to him; that Castle Terrace, Inc. agreed to give up to Heller 20 percent of the equity in the land referred to for the use by Castle Terrace, Inc. of the $25,000 credit against the total purchase price of the land; and that Leonard Brenner, a director, officer and principal stockholder of Castle Terrace, told the Clearview Manor plaintiffs that Heller had received a 20-percent equity in the land for permitting the 25,000 credit allowed by Berkson to go to Castle Terrace, to be applied against the total purchase price of the land.

[3] Defendant Heller was the promoter, organizer, president and treasurer of Clearview Manor.

It is then alleged that the $25,000 credit allowance by Berkson to Castle Terrace is not the asset and property of Heller, but is the asset, property and right of Clearview Manor, and that the transaction between Heller and Castle Terrace should be cancelled as to a 20-percent equity in the land, and those rights should be decreed to be the rights of Clearview Manor; that Castle Terrace commenced and is still erecting townhouses on the property; and the plaintiffs pray that the court decree that the 20-percent equity in the land held by Heller shall be decreed to be the asset and property of Clearview Manor; that the defendants should be ordered to pay Berkson the balance due, or, in the alternative, that in case defendants fail to make the payments and Berkson declares a forfeiture, the court enter judgment for 20 percent of the present value of the land and improvements in the sum of $75,000 or more, against the defendants, subject to Clearview Manor conveying to Castle Terrace all of its interest in the remaining land.

On September 8, 1961, plaintiffs asked leave to file an amendment and supplement to Count II, which was allowed. Among other things the amendment impleaded the Castle defendants as additional defendants. The amendment and supplement to Count II set out that the contract dated November 28, 1960, between Hochman as purchaser and Berkson as seller for the land described, called for the purchase of the land for the total price of $136,800, and that Hochman, in the execution of the contract, was acting for Castle defendants.

It is also set out in the amendment that the $25,000 was in fact the asset of Clearview Manor and that all the Castle defendants knew, or should have known that fact, and that the $25,000 was not forfeited either by Heller or Clearview Manor, but was permitted by Clearview Manor to be retained by Berkson as liquidated damages; that Heller had no interest or right to that sum. The plaintiffs pray that the court find and decree that the

subscription agreement entered into between Seymour Heller and the Castle defendants should be void as against Clearview Manor, and that the court decree that an accounting of all receipts and disbursements to this date be given by defendants Heller and Castle Terrace.

Defendant Heller filed an answer to the entire complaint and supplement thereto, and the Castle defendants filed a sworn answer and counterclaim to Count II of the complaint. Attached to it was the release heretofore referred to, given by Berkson and Clearview Manor, by Heller as president.

The case was assigned to a master in chancery for hearing. Evidence was offered by the plaintiffs in support of Count II of their complaint as amended. At the close of plaintiffs' proofs before the master, Castle Terrace, Inc., and the Castle defendants moved for a finding in their favor and that Count II of the complaint be dismissed as to them. The master overruled the motion on July 26, 1962, and on July 31, 1962, they filed a petition requesting that the master in chancery be required to certify the report of the proceedings, together with the exhibits, and that the chancellor then review the ruling of the master and determine the motion of the petitioners made at the close of the case.

At a hearing before the chancellor on March 26, 1963, a decree was entered overruling the order entered by the master in chancery refusing to dismiss Count II as to Castle Terrace, Inc., and the Castle defendants, and ordering that Count II and supplement be dismissed as to Castle Terrace, Inc., and the Castle defendants. A motion to vacate the decree was overruled on May 3, 1963, and plaintiffs appealed.

On the same day the court entered an order passing on the motion of Heller to review the master's finding on his motion which had been presented before the master in chancery at the close of plaintiffs' case in chief. Heller's motion before the master was to dismiss Count II of the

complaint as to him. The master overruled that motion and the court ordered that the ruling of the master as to Heller be sustained, and that Heller might proceed before the master in chancery to adduce evidence in support of his defense to Count II and the amendment and supplement thereto. Heller did not appeal.

The evidence shows that on July 10, 1959, Clearview Manor, Inc., upon whose behalf plaintiffs as shareholders brought this action, entered into articles of agreement with Irving L. Berkson to acquire vacant land in Waukegan, Illinois for $125,000. The defendant, Seymour Heller, who was a building contractor and the sole proprietor of Heller Construction Co., was the president, a director and shareholder in Clearview Manor, Inc. Clearview Manor deposited $25,000 as earnest money with Irving Berkson on account of a land purchase and constructed townhouses on some of the property, but concluded that the venture was not financially profitable. In April and May 1960, Heller tried to sell the unimproved property, and in July 1960, Clearview Manor, Inc. negotiated with the seller, Berkson, for a release of its obligations to pay the remainder of the purchase price for the unimproved property under its articles of agreement. On July 29, 1960, Clearview Manor and all of its shareholders (which included all of the plaintiffs) entered into a release agreement with Berkson wherein Berkson released Clearview Manor of its obligation to purchase the unimproved property, and Clearview Manor released Berkson's obligation to sell. The agreement further provided that the $25,000 earnest money previously deposited by Clearview Manor with Berkson was to be retained by Berkson as liquidated damages.

The testimony revealed that there were four meetings between Heller and the Castle Terrace group relating to the land involved. The first meeting was on or about November 17, 1960, when Heller went to defendant Brenner's home and told Brenner he was interested in the

389

townhouses Brenner had built at Golf Mill Gardens. During this conversation Heller mentioned the Waukegan land described in Count II of the complaint as amended and supplemented. Brenner called defendant Hochman who joined the meeting, after which it was arranged for them to see the land in Waukegan. The second meeting took place the following Monday, November 21.

Defendants Heller, Brenner, Hochman and Rongner went to see the land in Waukegan, and while they were at the site David Berkson, a brother of Irving L. Berkson, drove by and stopped. Hochman knew Berkson, and after Berkson told him he was the owner, Hochman indicated to him that he might be interested in a purchase. Berkson told him the land was committed to another buyer and that he would not know until Friday of that week if the land would be available. On Friday Berkson advised Hochman that the land was available, and a meeting was arranged for Saturday, November 26, 1960. On Saturday the third meeting took place, and Berkson offered to sell the land for $110,000; Hochman offered to purchase it for $105,000, and the purchase price was agreed between them at $110,000. On Monday, November 28, the fourth meeting took place at Irving Berkson's office, during the course of which meeting Irving Berkson advised Hochman that the price of the purchase would have to be increased by $1,800 because of taxes which had been paid by the seller. It was agreed by the Castle defendants to pay Berkson the increased price, or a total of $111,800 for the land. The Castle defendants then went to lunch and their attorney, Kane, remained with Irving Berkson and his secretary to draft the contract.

When Berkson dictated the price of $136,800, Kane requested him to stop, and said the price agreed upon was $111,800. Berkson said that Kane was correct, that the price was $111,800, but that he had in his possession the sum of $25,000 previously paid by Heller in connection with the subject property, and that Heller had asked him

to increase the price by $25,000 and give the purchaser credit for the $25,000. Heller had asked Berkson to do this before the Castle defendants came to the meeting. Berkson further told Kane that as long as this did not affect Kane, and since his clients were still paying the agreed price of $111,800, he was putting this in the contract. The Castle defendants followed the advice of their attorney, and the purchase contract was signed on November 28, 1960, by Berkson and Hochman with the purchase price designated as $136,800, and credit given for $25,000. Title was to be taken in Hochman or his nominee.

The Castle defendants, as adverse witnesses, testified that on and prior to November 28, 1960, they did not know of Clearview Manor, Inc., nor did they know of any interest it or any of its shareholders previously had in the property, nor did they know that Clearview Manor had previously deposited $25,000 or had released its $25,000 deposit to Berkson. Plaintiffs contend in their brief that this testimony is untrue. However, it cannot be said that their testimony was demonstrably false.

Subsequent to November 28, 1960, Heller sought to perform contracting services for the Castle defendants, first on a full-time basis, then during the discussions Heller changed his offer to perform services at a later time in the development of the property. These discussions were never finally determined. Their tenor was that in exchange for services performed by Heller he was to receive a share of the profits.

A preorganization agreement for the Castle Terrace Corporation, dated January 1, 1961, was executed by all the individual defendants, including Heller, under the terms of which Heller was to be given a 20-percent interest in the corporation. The agreement contained a statement that Heller had theretofore forfeited $25,000 to Berkson. The agreement recited that the corporation was to acquire title to the land in question and that Berkson as seller had given the corporation a credit against

391

the purchase price for the $25,000 forfeited by Heller. The articles of incorporation implemented this agreement by showing Heller's interest in the corporation as fully paid, which, if not true, would of course have rendered the articles questionable. Also, the contract under which the purchase was made by Castle Terrace contains a rider showing that Berkson "has in his possession the sum of $25,000 previously paid in connection with subject property, and agrees to credit purchaser under this contract with said $25,000.00." The money being credited to the Castle Terrace group was money previously paid by Clearview Manor to Berkson as earnest money.

Berkson testified that on or about July 29, 1960, he had a conversation with Glassman, the attorney for Clearview Manor, wherein he told Glassman that if at any time before he sold the property to any other purchaser his people wanted to pick up the deal, he would reinstate the contract for them; that an agreement was prepared in accordance with Glassman's request, and a signed copy sent to Berkson by Clearview Manor whereby the time for payment of $50,000 (due on July 10, 1960) was to be extended for a 3-month period, provided they would pay the interest due on the total balance at that time. Berkson further testified that the agreement was not signed by him because it was not complied with, and that he had no conversation with Glassman or Heller from July 1960 until November 28, 1960.

Plaintiffs' first contention is that a motion to dismiss made at the close of plaintiffs' case must be denied if there is any evidence in support of their case; that all reasonable intendments therefrom most favorable to plaintiffs which tend to establish their case must be construed in their favor and taken as true; and that the ruling of the master on the motion must be given great weight in that the chancellor heard no evidence. This contention is without merit, as the court is required to weigh the evidence in ruling on this motion. Numerous cases

are cited by plaintiffs in support of this contention; however, they are not in point because they are concerned with motions for a directed verdict made at the close of plaintiffs' case in a jury trial. In the case at bar we are not concerned with such a motion, but rather with a motion under section 64(5) of the Civil Practice Act (Ill Rev Stats 1961, c 110, § 64(5)) which states:

"Upon the trial of a proceeding in equity and in cases at law tried without a jury defendant may, at the close of plaintiff's case, move for a finding, judgment or decree in his favor. In ruling on the motion the court shall weigh the evidence . . ."

There is an interpretation of this statute set forth in Brubaker v. Gould, 34 Ill App2d 421, 430, 180 NE2d 873; however, we disagree with that interpretation and cite, rather, the dissent therein at pages 440 to 450 for a statement of what we consider to be the obligation of the court in weighing the evidence on a motion such as this in a chancery case.

■■ It has been held that the master's report is of an advisory nature only. In Hoelscher v. Hoelscher, 322 Ill 406, 153 NE 662, the court held that after a master's report has been filed all the facts are open for the consideration in the first instance by the trial court, and in case of an appeal, by the reviewing court. The court said, at page 413:

"In Chechik v. Koletsky, 311 Ill 433, the rule is laid down that the ultimate and final question in this court is, Was the decree rendered by the chancellor the proper one under the law and the evidence, without regard to the finding of the master upon any particular question of fact?"

In Zilvitis v. Szczudlo, 409 Ill 252, 99 NE2d 124, the court said, at page 255:

393

"In a chancery case the facts are found by the court, and the master's report, while prima facie correct, is of an advisory nature only. The facts are all open for consideration in the first instance by the trial court, and afterwards by this court in case of appeal. Without regard to the findings of the master upon any particular question of fact, the final question in this court is, Was the decree rendered by the court a proper one under the law and evidence? This rule is well settled. [Citing cases.]"

In the case before us the master, in order to deny dismissal of Count II of the complaint, as to Castle Terrace, Inc., and the Castle defendants, found that the facts in the record before him were sufficient to prove a prima facie case. The chancellor weighed the evidence and in dismissing Count II, found exactly the opposite. In reviewing the conclusions and findings made by both the chancellor and the master, we conclude that the evidence, or lack of evidence, supports the chancellor's decision in allowing the defendants' motion to dismiss.

Plaintiffs also contend that a constructive trust should be imposed upon the subject property with the Castle defendants as constructive trustees. This contention is likewise without merit. The purpose of imposing a constructive trust in the instant case would be to prevent the Castle defendants from holding for their own personal benefit and advantage property which they have allegedly gained by reason of fraud or through the abuse of a special confidence placed in them by the plaintiffs. However, before a court of chancery will declare such a trust it is incumbent upon the plaintiffs to show by clear, convincing and unequivocal evidence either the existence of actual or constructive fraud, or the abuse of some fiduciary duty owed them by which the defendants obtained legal title to the subject property. Tarpoff v. Karandjeff, 51 Ill App2d 454, 201 NE2d 549; Cunningham v. Cunningham, 20 Ill2d 500, 170 NE2d 547; Lux v.

Lelija, 14 Ill2d 540, 152 NE2d 853; Neagle v. McMullen, 334 Ill 168, 165 NE 605; Wood v. Armstrong, 401 Ill 111, 81 NE2d 468. We find nothing in the record to sustain plaintiffs' theory on either ground.

The record does not indicate that the Castle defendants ever owed any fiduciary duty to plaintiffs. The fact that Heller may have breached his fiduciary duty to Clearview Manor is neither relevant nor material here. It does not follow that because Heller may have owed a fiduciary duty to the plaintiffs the Castle defendants, not knowing of this relationship, can be impressed with a similar duty. In order for plaintiffs to recover on the theory of fraud it was incumbent upon them to establish by clear and convincing evidence that the Castle defendants received a credit of $25,000, with the actual or constructive knowledge that the money belonged to Clearview Manor. However, as previously pointed out in this opinion, the record does not indicate that at the time of the purchase of the subject property by the Castle defendants they had actual knowledge of the existence of any interest which the plaintiffs might assert in this credit.

Although the record disclosed that there was testimony to the effect that the Castle defendants knew there were other people in addition to Heller who had lost money in a prior transaction concerning the subject property, it was not until after November 28, 1960—the date the Castle defendants purchased the subject property from Berkson—that they acquired this knowledge.

██ After carefully examining the record we agree with the chancellor that the plaintiffs failed to demonstrate by clear and convincing evidence that the Castle defendants purchased the subject property fraudulently, in bad faith and with notice of the alleged rights of the plaintiffs. Moreover, since the Castle defendants, in paragraphs 11 and 12 of their answer, affirmatively pleaded lack of notice of plaintiffs' purported interest in the subject property, and stated that the Castle defendants, in

395

acquiring subject property, were innocent purchasers for value and were free from any right of claims of interest of plaintiffs, and since the plaintiffs failed to reply to these affirmative defenses, they stand admitted. First Federal Savings & Loan v. American Nat. Bank, 100 Ill App2d 460, 241 NE2d 615. The trial court was correct in dismissing Count II against the Castle defendants. In so holding, we by no means indicate a position which would foreclose plaintiffs from pursuing their claim against Heller to the point of obtaining for Clearview Manor, Inc. Heller's stock interest in Castle Terrace, Inc. Neither the individual defendants nor Castle Terrace, Inc. would be necessary parties to such relief. See Damer v. Brown, 84 Ill App2d 72, 228 NE2d 465.

Accordingly, the judgment of the Circuit Court dismissing Count II and the supplement thereto as against Castle Terrace, Inc., and Castle defendants, and the denial of the motion to vacate the said order of dismissal, are affirmed.

Affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.