HAWTHORN MELLODY FARMS DAIRY, INC., Plaintiff and Counterdefendant-Appellee, *v.* BEN ROSENBERG, Defendant and Counterplaintiff-Appellant.

(No. 55519;

First District (5th Division)—April 27, 1973.

Edward R. Vrdolyak and Alan Conrad Mendelson, both of Chicago, for appellant.

John J. Coffey, of Chicago, (Rothschild, Barry & Myers, of counsel,) for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Although Hawthorn Mellody Farms Dairy, Inc. originally sued Ben Rosenberg, an independent milk vendor, the instant case, by stipulation of the parties, proceeded only on two counts of Rosenberg's counterclaim against Hawthorn. Judgment was entered in favor of Hawthorn at the close of Rosenberg's evidence.

Count I thereof alleged breach of oral contract to trade milk routes. Count III alleged breach of a written union contract to provide for route riders. Although the union contract was not exhibited with the counterclaim, it quoted the applicable provision:

> "Processor to furnish route rider for all vendor routes purchased or sold after May 1, 1959, and also for prior vendors who request route rider service. Processor to pay for same, or be subject to penalty under Article 20; Paragraph 2."

Hawthorn denied all the allegations of Count I and admitted the existence of the union contract but denied liability regarding Count III.

On appeal Rosenberg contends (1) that the standard a trial court sitting without a jury must apply when ruling on a motion for judgment at the close of plaintiff's evidence is whether plaintiff established

a prima facie case, (2) that he established a prima facie case for breach of written contract under Count III of the counterclaim, and (3) that he established a prima facie case for breach of oral contract under Count I of the counterclaim.

The evidence is summarized.

Anthony W. Christiano, President of the Milk Drivers' Union testified that Rosenberg was a member of his union in good standing. He defined "route rider" as an employee of the processor who relieves another driver one day each week. He further testified that the union contract contained a grievance procedure available to independent vendors but was uncertain whether Rosenberg had utilized this procedure regarding Hawthorn's failure to supply route riders at its expense. The provision of the union contract in question had been in effect for ten or fifteen years and had been enforced by the union although he could not recall specific instances.

Ben Rosenberg testified on his own behalf that between 1949 and 1970 he was an independent milk distributor. He had his own milk route, his own customers, and bought his own supplies from processors. His milk route consisted of two parts: approximately 80% was located in a racially changing area on the west side of Chicago and the remaining part was located in Skokie. Prior to the time relevant to the instant case (October 1964—February 1967), he purchased milk at Twin Oaks Dairy and the Pure Milk Association. During the time he purchased milk from Twin Oaks he also worked in the plant one day each week and the company supplied a route rider for him on that day at company expense. No other processor had ever supplied him with a route rider at its expense.

Rosenberg further testified that in September of 1964 an agent of Hawthorn, Matt Eichhorn, approached him while he was doing his route. Eichhorn attempted to convince him to switch processors. According to Rosenberg, Eichhorn promised that Hawthorn would give him a good price on milk, would supply him with a spare truck if his broke down, and would supply him with route riders. He told Eichhorn he would think about the proposal and they would meet later.

According to Rosenberg, the two men met at a drugstore one week later. Eichhorn additionally offered him a week's supply of free milk if he would switch to Hawthorn. However, Rosenberg mentioned that he wanted to trade his west side route for one near Skokie. Rosenberg testified that Eichhorn stated that there would be "no problem so far as that [trading routes] is concerned. So Rosenberg agreed to switch to Hawthorn. They agreed to discuss the matter further at Hawthorn's office.

Rosenberg testified that on about September 23, 1964, a meeting was held in Edwin Dunmore's office at Hawthorn. In addition to Rosenberg and Eichhorn, William Schulz and Dunmore were present. At that time according to Rosenberg, Eichhorn reviewed the terms of the agreement they had reached including the provision for trading routes on a point for point basis. A point is equivalent to one quart of milk per week which is the method used in the business to determine the value of a milk route. Schulz and Dunmore agreed that there would be no problem and welcomed him to Hawthorn.

Beginning on October 1, 1964, except for several six gallon Norris containers of 2% milk which were unavailable at Hawthorn, Rosenberg testified that he purchased all his supplies from Hawthorn. Thereafter although he made no written requests and filed no grievance with Hawthorn, he made numerous oral requests of Eichhorn for route riders and for route change. He also testified that he made the same request of other officials of Hawthorn (Dunmore, Leroy Thomas and Vince Giacmino) but received no satisfaction.

Rosenberg also testified to the union pay scale for route riders and to the number of weeks he purchased his supplies from Hawthorn for the purpose of calculating the amount of his damages. On being prevented from testifying to the value of points on the west side of Chicago and in Skokie by the sustaining of the counter-defendant's objection, Rosenberg made an offer of proof to that effect, which was denied.

Edwin Dunmore, Hawthorn's marketing manager during the time in question, testified that his job was to promote sales. On approximately September 23, 1964, a meeting was held in his office with Ben Rosenberg regarding Rosenberg's change to Hawthorn. Dunmore testified that Rosenberg was interested in trading his west side route for one in Skokie. Although no promises were made to Rosenberg, "we said we felt we might be able to work something out for him." Another vendor had previously expressed an interest in such an exchange. Subsequently a Hawthorn solicitor was assigned to look for new business for Rosenberg and some points were delivered directly to Rosenberg. Dunmore further testified that Rosenberg made no request to be supplied with route riders.

Raymond Van Geen, Hawthorn's corporate credit manager, testified that it was Hawthorn's policy, and to his knowledge the policy of most processors, not to pay for route riders supplied to independent vendors but that Hawthorn would supply and pay route riders and would charge their services back against the vendor.

Alfred M. Johnson, Vice-President of Twin Oaks Dairy, testified that he had considerable experience in the milk business and in the sale of routes. He testified that the value of a point on the west side of Chicago

was about $.50 while the value in Skokie was about $2.00. On cross-examination it appeared that the witness did not know the boundaries of Rosenberg's route or the number of points it contained although he admitted these factors were significant.

Frank J. Cost, Hawthorn's Evanston branch manager during the time in question, testified that he had received a phone call from Schulz regarding switching points to Rosenberg but that no points were available. Nonetheless, he dispatched a solicitor named Di Servia to drum up business for Rosenberg and that Di Servia had transferred some points directly to Rosenberg. Moreover, he testified that to his knowledge processors do not at their own expense supply route riders to independent vendors.

Vince Giacmino, Cost's assistant, testified that Hawthorn had never provided any independent vendor route riders at its own expense and that Rosenberg had never requested a route rider so far as he knew.

Rosenberg rested his case at the conclusion of this evidence and Hawthorn moved for judgment in its favor. After hearing the arguments of both sides, the trial court granted Hawthorn's motion.

*Opinion*

Rosenberg first contends that the standard a trial court sitting without a jury must apply when ruling on a motion for judgment at the close of plaintiff's evidence is whether plaintiff established a prima facie case. As corollaries to this rule he asserts that defendant's motion admits all facts and all reasonable inferences drawn from those facts and that the court must view such facts and inferences in the light most favorable to plaintiff.

■■ Section 64(5) of the Civil Practice Act specifically requires the trial court sitting without a jury to "weigh the evidence" when ruling on defendant's motion for judgment at the close of plaintiff's case and "[i]f the ruling on the motion is favorable to the defendant, a judgment or decree dismissing the action shall be entered." This provision was added to the statute by amendment in 1955. Recent cases implementing this amendment include *Allfree v. Estate of Rosenthal* (1969), 113 Ill.App.2d 90, 92-93, 251 N.E.2d 792, 793; *Miller v. Heller* (1969), 106 Ill.App.2d 383, 393-394, 246 N.E.2d 150, 156. For a full discussion of this point see the dissenting opinion in *Brubaker v. Gould* (1962), 34 Ill.App.2d 421, 440-450, 180 N.E.2d 873, 881-886.

■■ Thus, in ruling on a motion at the close of plaintiff's evidence, a trial court sitting without a jury should *not* consider the evidence in the light most favorable to plaintiff, as it must in a jury case. Rather, in accordance with the terms of the statute, the court must weight the evi-

dence (including any that may be favorable to defendant) which necessarily requires the court to draw reasonable inference therefrom, determine the credibility of witnesses, and then not simply decide whether the plaintiff has made out a prima facie case, but make a final determination and enter judgment for defendant if the plaintiff has not met his burden of proof by preponderance of the evidence. Moreover, a reviewing court should not reverse the trial court's ruling on such a motion unless the ruling is manifestly erroneous. *Bilyeu v. Plant* (1966), 75 Ill.App.2d 109, 119, 220 N.E.2d 513, 517.

Rosenberg next contends that he established his case for violation of the written union contract. Neither party disputes the terms of the applicable provision of the union contract. As applied to Rosenberg as best we can determine without viewing the whole contract, it required Hawthorn *upon proper request* to supply and pay for a route rider.

■■ After hearing the evidence, the trial court concluded that Rosenberg had not made a proper request for a route rider. Only the testimony of Rosenberg himself supports his position that he requested a route rider. Although this testimony alone may have been sufficient to establish that the request was made, the testimony of Dunmore and Giacmino, two of several persons to whom Rosenberg testified he had made requests, directly contradicted him and the other persons to whom Rosenberg testified he had made requests were not called as witnesses. Furthermore, Rosenberg admitted that he had filed no grievance although he could have done so and that he had made no written request for a route rider. We believe this situation is exactly what the legislature had in mind in changing the statute to permit the trial court to weigh the evidence in a bench trial on a motion for judgment at the close of plaintiff's evidence. Here, the time of litigants, lawyers and witnesses, as well as that of the court would be wasted by requiring defendant to put on its case with the same witnesses, and perhaps others to testify to the same effect. Here, the trial court upon weighing the evidence could and did, correctly decide that no proper request was made.

■■ Although Rosenberg asserts that the terms of the contract were perfectly clear and that a request for a route rider would have been a useless gesture, the evidence seems otherwise. Since the full contract was not exhibited with the complaint, we cannot fairly determine the intent of the parties particularly since the provision which is asserted as being applicable refers to another section of the contract. Moreover, the testimony of Van Geen indicates that, in accord with the practice in the trade, Hawthorn would supply and pay for the services of a route rider and would charge the cost of these services back against the vendor. Even Rosenberg's testimony does not specifically indicate that any agent

of Hawthorn agreed that it would pay for a route rider. In these circumstances we cannot say that the trial court's ruling on this count was manifestly erroneous.

■■ Rosenberg lastly contends that he established his case for violation of an oral contract to trade milk routes. His own testimony is once again the only evidence supporting his position and it does not indicate whether the alleged contract was made at the offices of Hawthorn with Eichhorn or with Dunmore. Furthermore, Dunmore's testimony indicates that no such promise was made but on the contrary that they agreed only to make an effort to help Rosenberg. This effort, according to both Dunmore and Cost, was made. In light of the evidence, we do not find the trial court's decision regarding this count to be manifestly erroneous.

Therefore, the judgment of the trial court is affirmed.

Affirmed.

DRUCKER, P. J., and ENGLISH, J., concur.