DROVERS NATIONAL BANK OF CHICAGO, Plaintiff, *v.* BERT FERRELL, Defendant and Third-Party Plaintiff-Appellant—(BENJAMIN S. ADAMOWSKI *et al.*, Third-Party Defendants-Appellees.)

(No. 56793; )

First District (5th Division)—August 31, 1973.

Michael F. Mulcahy and Alfred M. Walter, both of Chicago, for appellant.

Francis X. Riley, of Chicago, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Bert Ferrell, counterplaintiff, appeals from a judgment in favor of certain counterdefendants contending (1) that the trial court erred in not conducting a jury trial, and (2) that counterdefendants were not entitled to judgment in their favor at the close of his evidence.

Drovers National Bank of Chicago filed a complaint against Bert Ferrell, Benjamin S. Adamowski, Thomas J. Haggerty, Andrew H. Trilla and Lester Trilla on January 20, 1967. On February 24, 1967, Ferrell filed an answer to the bank's complaint and a counterclaim against his codefendants. The counterclaim alleged that counterdefendants had solicited Ferrell's help in raising $100,000 needed by counterdefendants in a joint venture, that Ferrell introduced counterdefendants to his bankers, that when the bank would not give them a loan without a financial statement and time being of the essence, Ferrell agreed to borrow the money in his name and counterdefendants agreed to guarantee payment to the bank and to repay the loan, that upon counterdefendants executing a written guarantee to the bank and upon Ferrell's execution of a note to the bank, the bank transferred the funds to Ferrell's account, that Ferrell then issued his check to Haggerty who accepted the loan as agent for the other counterdefendants, that counterdefendants initially

repaid the bank $25,000, that Ferrell had to make two payments of $25,000, and that Ferrell made frequent demands of counterdefendants for repayment, but to no avail. Ferrell seeks $50,000 plus interest from counterdefendants for the two payments he made to the bank. A copy of Ferrell's check to Haggerty was attached to the counterclaim. Ferrell filed no jury demand with his answer and counterclaim. On July 25, 1967, an agreed order was entered whereby the bank's complaint was dismissed without prejudice to Ferrell's counterclaim.

On October 17, 1967, following various motions not relevant to the instant appeal, counterdefendants filed a jury demand and (although they do not appear in the record) answers to Ferrell's counterclaim. On October 15, 1968, after taking depositions, Ferrell filed a motion for summary judgment against counterdefendants. Affidavits and counter-affidavits were also filed. On January 31, 1969, the trial court granted Ferrell summary judgment against Haggerty but denied the motion as against the other counterdefendants. On October 6, 1971, immediately before trial on the counterclaim the counterdefendants waived trial by jury and Ferrell immediately filed his jury demand. The trial court, over Ferrell's objection, refused to impanel a jury and trial was had without jury.

At trial, the testimony of the witnesses substantially agreed regarding certain preliminary facts. It appears that Ferrell met Adamowski, Haggerty and Lester Trilla in Trilla's office where Ferrell was asked to help the counterdefendants raise $100,000. Ferrell agreed to introduce them to his bankers and they all went to the Drovers National Bank where Ferrell introduced them to John F. Keeley and Fred Cummings, vice-presidents of the bank. Counterdefendants then asked to borrow the money they needed, but the bankers stated they were unable to make the loan since counterdefendants had no financial statements on file with the bank. Since time was apparently of the essence, Lester Trilla suggested that Ferrell borrow the money they needed and the bank agreed to loan Ferrell the money. Ferrell then issued a note to the bank and the bank transferred $100,000 less discount to Ferrell's account. It appears that at about the same time, a discussion took place regarding a guarantee and that although the bankers had not requested a guarantee Adamowski, Haggerty and Trilla signed one of the bank's guarantee forms. The instant case turns upon the substance of their discussion regarding the guarantee. It further appears that Ferrell then issued his check for $100,000 to Haggerty, that Ferrell was required to make two payments of $25,000 to the bank which are the subject of the instant controversy, and that the bank's complaint was dismissed.

Counterplaintiff's first witness, Keeley, stated that he had not paid

particular attention to the discussions between Ferrell and counter-defendants and therefore could shed no light on the substance of the conversation regarding the guarantee.

Ferrell himself testified that before signing his check to Haggerty he asked counterdefendants if they would guarantee that he would not lose any money, that they said that they would so guarantee him, and that he then signed the check and gave it to Haggerty. When asked about the written guarantee signed by counterdefendants, Ferrell stated that he was under the misapprehension that the guarantee which had been signed ran to him rather than to the bank.

Cummings testified that he had suggested to Ferrell the need for a guarantee, that before signing the note to the bank, Ferrell had asked counterdefendants whether they would guarantee him to pay back the money, and that counterdefendants had assented to having Ferrell look to them for payment if the bank pursued him for the money. Cummings did testify however that the bank guarantee was signed pursuant to the discussion regarding the guarantee.

Haggerty was called as counterplaintiff's next witness pursuant to section 60 of the Civil Practice Act, but he was not questioned about the conversation regarding the guarantee. Adamowski was next called pursuant to section 60 and testified that Cummings had first raised the question of a guarantee, that counterdefendants had agreed to guarantee the bank and signed a written bank guarantee, and that Ferrell was going to sign the note with no guarantee. Upon considering the evidence properly before it, the trial court granted counterdefendants' motion.

*OPINION*

■■ Counterplaintiff first contends, although in somewhat different language, that the trial court erred in not conducting a jury trial. Section 64(1) of the Civil Practice Act (Ill. Rev. Stat. 1967, ch. 110, § 64(1)) provides in relevant part regarding jury trials that:

> "A plaintiff desirous of a trial by jury must file a demand therefor with the clerk at the time the action is commenced. A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his answer. Otherwise, the party waives a jury. * * * If the plaintiff files a jury demand and thereafter waives a jury, any defendant and, in the case of multiple defendants, if the defendant who filed a jury demand thereafter waives a jury, and other defendant shall be granted a jury trial upon demand therefor made promptly after being advised of the waiver and upon payment of the proper fees, if any, to the clerk."

Counterplaintiff argues that this statute should be construed (1) in ac-

cordance with its plain meaning, (2) liberally in favor of the right to jury trials, and (3) liberally since relating to a remedy. Although we agree with counterplaintiff that the right to trial by jury is an extremely significant right, we cannot agree with him that he has not waived that right in the instant case. Counterplaintiff did not file a jury demand when he filed his answer and counterclaim. He did not file such a demand even some five months later when the bank's complaint was dismissed and it was apparent that the case was proceeding solely on his counterclaim. Quite the contrary, it was counterdefendants who almost three months after the bank's complaint was dismissed filed a jury demand. Moreover, trial was not had on the case until after several years had passed and after both parties had made numerous court appearances. It is abundantly clear from his record that counterplaintiff had ample opportunity to demand jury trial and failed to do so. Having failed to demand jury trial, pursuant to the statute, counterplaintiff has waived this right. (*Trapani v. Trapani*, 109 Ill.App.2d 202, 248 N.E.2d 294.) We are not convinced by counterplaintiff's argument that, being initially one of multiple defendants in the case, he was entitled by the last sentence of section 64(1) to rely on counterdefendants' demand. At the time counterdefendants properly filed their jury demand, the original action had been dismissed and only the counterclaim remained. Therefore Ferrell, the counterplaintiff, was no longer a defendant and could no longer rely on counterdefendants' demand for a jury trial. In the instant circumstances counterplaintiff knew quite well that the matter was proceeding on his counterclaim and should have taken timely precautions to preserve this right.

Counterplaintiff also contends that counterdefendants were not entitled to judgment in their favor at the close of his evidence. It appears from the briefs that the parties misconstrue the function of the trial court in ruling on a defendant's motion for judgment at the close of a plaintiff's evidence in a trial without a jury. The trial court when sitting without a jury must *not* consider the evidence in a light most favorable to plaintiff; it must weigh the evidence including any evidence favorable to defendant. (*Hawthorn Mellody Farms Dairy, Inc. v. Rosenberg*, 11 Ill.App.3d 739, 743-744, 297 N.E.2d 649, 652-653.) Furthermore, a reviewing court must not reverse a trial court's ruling on such a motion unless the ruling is manifestly erroneous. *Bilyeu v. Plant*, 75 Ill.App.2d 109, 119, 220 N.E.2d 513, 517.

In the instant case, we cannot say that the trial court's ruling was manifestly erroneous. The credibility of witnesses is something uniquely within the purview of the trier of fact. Here, although there is testimony in the record regarding an oral guarantee, the manifest weight of the

evidence, including the testimony of the counterplaintiff himself, indicates that that guarantee ran not to counterplaintiff but to the bank. The fact that a written bank guarantee form was executed pursuant to the parties' discussions is weighty evidence regarding the nature of the agreement between the parties which the trial court could have considered. On these facts we cannot conclude that the trial court erred in granting counterdefendants' motion for judgment at the close of counterplaintiff's evidence.

Therefore, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DRUCKER, P. J., and ENGLISH, J., concur.