WENDELL L. JACKSON, Plaintiff-Appellant, *v.* WILLIAM SPIVEY *et al.*, Defendants-Appellees.

(No. 60251;

First District (5th Division)—February 14, 1975.

Di Monte & Lizak, of Chicago, for appellant.

Stanton & Healy, of Chicago (Edwin A. Strugala, of counsel), for appellees.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff brought this contract action against defendants, William Spivey and Nationwide Window Cleaning Co., Inc. (hereinafter Nationwide), to recover $14,000 due on an alleged oral contract to purchase his 40-percent interest in the partnership known as J. and J. Window Cleaning Co. At the close of plaintiff's case the trial judge sitting without a jury granted Spivey's motion for a finding in his favor. The judge then entered judgment against Nationwide in the amount of $14,000 and dismissed Spivey from the case. Nationwide does not appeal. Plaintiff appeals the dismissal of Spivey from the case and he phrases the sole issue on appeal to be "whether there was sufficient evidence to support a prima facie case as against * * * William Spivey, individually, thereby precluding the granting of a directed verdict in favor of * * * [Spivey]."[1]

The pertinent evidence adduced at trial was as follows: Spivey was called as a witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60) and testified that he was president of Nationwide. He had known plaintiff approximately 3 to 4 years. Plaintiff was with the company that did work for Nationwide. He and plaintiff

---

[1] Although plaintiff argues that there was but one oral contract, and that it was with Spivey in his individual capacity, plaintiff has not challenged on this appeal the judgment entered in his favor and against Nationwide.

engaged in a certain business transaction, the outcome of which was that for $20,000 Nationwide bought plaintiff's 40-percent interest in J. and J. Window Cleaning Co. Plaintiff was to transfer his partnership interest, which he later did. Spivey acknowledged that plaintiff had completed everything he had to do under the contract.

The first payment to be made was $1500, which was given to plaintiff, as was the balance of the down payment, an additional $4500. The $14,000 balance has not been paid because Nationwide "went broke." After December 30, 1970, plaintiff no longer retained his interest in the partnership. At this point in the trial Nationwide stipulated "that it was a valid contract between Nationwide and [plaintiff], that a note was signed by Nationwide to the effect that Nationwide owes him $14,000."

Plaintiff, over defendant's objection, then had three exhibits, all records of Nationwide, marked for identification. Plaintiff's Exhibit No. 1 was a journal account entitled "Due from Officer Wm. Spivey." Spivey did not know about that entry but felt there was no relationship between the $4500 indicated in the journal and the payment by Nationwide to plaintiff. Plaintiff's Exhibit No. 2 was an adjusted journal account with three entries, one of which shows $1500 "due from Officer." Again, Spivey did not know about the entry. Plaintiff's Exhibit No. 3 was Nationwide's Federal corporation income tax return for 1971. In looking at this document Spivey did not see Nationwide's obligation to plaintiff listed. Thereafter defendants moved to strike the documents, and plaintiff moved to offer the documents into evidence; both motions the court took under advisement. It was also stipulated that the business transaction with plaintiff took place on December 30, 1970.

Plaintiff next testified on his own behalf. He has known Spivey approximately 4 years. His partnership subcontracted window cleaning from him. On December 30, 1970, he and Spivey had a meeting wherein they discussed the final terms for Spivey to purchase plaintiff's interest in J. and J. Window Cleaning Co. At that time they discussed the payments that were to be made, when they were to be made, and they shook hands on the deal. The purchase price was $20,000, and Spivey was the purchaser. All of plaintiff's discussions about the transaction were with Spivey.

Plaintiff did transfer his interest in the partnership. As far as plaintiff knew, there were no deals with Nationwide to buy any share of J. and J. Window Cleaning Co.; that it was a personal debt of Spivey. As to the payments he received, on December 30, 1970, Spivey gave him a check for $1500. One month later, in January, Spivey gave him a second check for $4500, and that was the last payment he received. The next

payment of $4000 was supposed to have been paid July 22, 1971, but was not made.

On cross-examination plaintiff admitted he knew of Nationwide, that he knew Spivey was president of Nationwide, and $15,000 per year of work came from Spivey as Nationwide's president. He did receive a paper which stated the balance of payments and on what days they were to be paid. He no longer has possession of this note. His children got hold of it and destroyed it.

Defendants' counsel then questioned plaintiff with regard to six exhibits. Defendants' first exhibit was a copy of the note that was given to plaintiff at the time that the transaction was closed. It shows a promise to pay plaintiff $18,500, payable in three installments, the first payment to be made on January 22, 1971, with the payer as Nationwide. On the back of the note (Exhibit No. 2) it shows three installments: $4500 on January 22, 1971; $4000 on July 22, 1971; and $10,000 on July 22, 1972. Defendants' Exhibits No. 3 and No. 4 are two Nationwide checks made out for $4500 and $1500 respectively, payable to plaintiff and with Nationwide as the payer. Under Nationwide's stamped name Spivey's signature appears.

Defendants' Exhibit No. 5 is a bill of sale designating plaintiff as the seller and Nationwide as the buyer of plaintiff's interest in the partnership. At the bottom is plaintiff's signature. Defendants' Exhibit No. 6 is a general assignment reciting that for $20,000 plaintiff sells, assigns, transfers and sets over to the assignee, "Nationwide Window Cleaning Co., Inc." plaintiff's interest in the partnership. This document was signed by plaintiff and acknowledged by the remaining 60-percent owner of the partnership. At this point defendants' Exhibits Nos. 1 to 6 were received in evidence without objection.

On redirect examination plaintiff reasserted that "the deal was that I would sell forty per cent of the company to William Spivey as an individual. At no time did we discuss Nationwide." The deal was oral. Following this plaintiff rested his case. Plaintiff's three exhibits were never received in evidence nor did plaintiff procure a ruling from the trial judge on them although they were discussed in closing argument.

During closing argument plaintiff's counsel admitted that at the time of the transaction plaintiff wanted to sell what he had, and he didn't care who bought it just so that he got his money.

OPINION

■■ Plaintiff contends that there was sufficient evidence to support a prima facie case as against Spivey individually, and therefore the court

erred in directing a finding for Spivey. Both parties agree that Spivey's motion was made pursuant to section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 64(33)).[2] In *Hawthorn Mellody Farms Dairy, Inc. v. Rosenberg*, 11 Ill.App.3d 739, 743-744, 297 N.E.2d 649, this court recently discussed this section of the Civil Practice Act and the governing standards, both for the trial court and the appellate court:

"Section 64(5) of the Civil Practice Act specifically requires the trial court sitting without a jury to 'weigh the evidence' when ruling on defendant's motion for judgment at the close of plaintiff's case and '[i]f the ruling on the motion is' favorable to the defendant, a judgment or decree dismissing the action shall be entered. This provision was added to the statute by amendment in 1955. Recent cases implementing this amendment include *Allfree v. Estate of Rosenthal* (1969), 113 Ill.App.2d 90, 92-93, 251 N.E.2d 792, 793; *Miller v. Heller* (1969), 106 Ill.App.2d 383, 393-394, 246 N.E.2d 150, 156. For a full discussion of this point see the dissenting opinion in *Brukaker v. Gould* (1962), 34 Ill.App.2d 421, 440-450, 180 N.E.2d 873, 881-886.

Thus, in ruling on a motion at the close of plaintiff's evidence, a trial court sitting without a jury should *not* consider the evidence in the light most favorable to plaintiff, as it must in a jury case. Rather, in accordance with the terms of the statute, the court must weigh the evidence (including any that may be favorable to defendant) which necessarily requires the court to draw reasonable inference therefrom, determine the credibility of witnesses, and then not simply decide whether the plaintiff has made out a prima facie case, but make a final determination and enter judgment for defendant if the plaintiff has not met his burden of proof by preponderance of the evidence. Moreover, a reviewing court should not reverse the trial court's ruling on such a motion unless the ruling is manifestly erroneous. *Bilyeu v. Plant* (1966), 75 Ill. App.2d 109, 119, 220 N.E.2d 513, 517."

Plaintiff argues that the alleged oral contract was with Spivey, individually, and he attempted to bolster his testimony at trial with Nationwide's corporate records. From these three exhibits plaintiff attempts to infer that Nationwide loaned the money for the purchase to Spivey; that Nationwide did not consider itself the purchaser because of the absence of the obligation being shown on its tax return; and that therefore the transaction was with Spivey, in his individual capacity. Although plaintiff's three exhibits were discussed in the oral testimony and in plaintiff's

---

[2] Formerly section 64(5) (Ill. Rev. Stat. 1969, ch. 110, par. 64(5)).

closing argument to the court, they were never received in evidence nor did plaintiff procure a ruling from the trial judge on them. It was the burden of plaintiff's counsel to obtain a ruling or a refusal of the court to rule. (*Cusanelli v. Steele*, 287 Ill.App. 490, 5 N.E.2d 296.) Not having been received in evidence, this court cannot consider the exhibits on review. Therefore, all that is left is plaintiff's testimony that the alleged oral contract was only with Spivey and not with Nationwide.

In opposition to plaintiff's testimony the court was presented with the following: (1) the testimony of Spivey that Nationwide was the purchaser of plaintiff's partnership interests; (2) plaintiff's admission that he knew of Nationwide, knew that Spivey was president of Nationwide, and plaintiff's past dealings with Nationwide; (3) a note from Nationwide to plaintiff for the balance of the purchase price; (4) two Nationwide checks received by plaintiff; (5) a bill of sale signed by plaintiff designating Nationwide as the buyer; (6) a general assignment signed by plaintiff designating Nationwide as the assignee; and (7) plaintiff's counsel's admission that at the time of the transaction plaintiff wanted to sell what he had, and he didn't care who bought it just so he got his money.

■■ After a careful review of this record, we cannot say that the decision of the trial court was against the manifest weight of the evidence. The judgment is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.