Margaret Schwehr, and Richard Schwehr, a Minor, by Next Friend, Plaintiffs-Appellees, v. Lewis G. Badalamenti, James Eisman, W. V. Merry, and Lois Merry, Defendants-Appellants.

Term No. 57–F–4.

Fourth District.

May 15, 1957.

Released for publication July 30, 1957.

Moran and Miller, of Rock Island (Bernard J. Moran, and Charles T. Miller, both of Rock Island, of counsel) for William V. Merry, and Lois Merry, appellants.

Baker, Kagy & Wagner, of St. Louis, and J. E. Wenzel, of Gillespie, for Lewis Badalamenti, and James Eisman, appellants.

Mudge and Mudge, of Edwardsville, for plaintiffs-appellees.

PRESIDING JUSTICE SCHEINEMAN delivered the opinion of the court.

This is a suit under the Dramshop Act of 1953 for damages to means of support of a widow and son, in consequence of the intoxication of a deceased husband and father. The jury returned several verdicts for plaintiffs, hereafter detailed, and judgments were entered for plaintiffs. On this appeal, separate briefs have been filed for two groups of defendants; those named Merry make no point as to liability, but confine argument to the legal effect of the verdicts. The other defendants contest liability, which is first considered, since it involves the factual situation.

The deceased, Henry Schwehr, had been drinking in the early evening in a tavern operated by W. V. and Lois Merry, and later in the Badalamenti place, which he left about 10:00 P.M. It sufficiently appears that he was intoxicated at that time. He was seen to enter his car, parked nearby, but did not immediately start the motor. Sounds of a motor running were heard during the night, and about 6:00 A.M. a neighbor, disturbed by the noise, went to investigate. As he approached the car, the motor died. Henry Schwehr was found lying on the front seat of the car, dead from asphyxiation due to carbon monoxide gas.

█ The brief for Badalamenti and Eisman correctly states the rule that, in an action for injury resulting "In consequence of intoxication," the intoxication must be the proximate cause of the injury. However, it does not follow that intoxication must be the sole cause of the injury. In a death case, it is not the rule that death must have been caused merely by alcoholic poisoning. In most cases the death or injury is directly caused by some other agency, but intoxication is held the proxi-

131

mate cause, because the person could not cope with conditions as he could have if sober.

Examples are: Triggs v. McIntyre, 215 Ill. 369 (drunk attacked by third person); Zahn v. Muscarello, 336 Ill. App. 188 (drowning); Emory v. Addis, 71 Ill. 273 (run over by train); Smith v. People, 141 Ill. 447 (horses ran away); Jones v. Keilbach, 309 Ill. App. 233 (drunk fell over a fence).

These and many other cases show: it is only where the cause of injury or death would have occurred regardless of intoxication that it can be held as a matter of law the intoxication is not the proximate cause. If the intoxicated person is killed by lightning, or by the assault of a highwayman or burglar, or other means having no logical relation to the drinking, then intoxication cannot be the proximate cause. Sauter v. Anderson, 112 Ill. App. 580; Hill v. Alexander, 321 Ill. App. 406. If a person in company with another man's wife is assaulted in jealous fury by the irate husband, who has not been drinking, drinking by the injured party is not the proximate cause. Danhof v. Osborne, 11 Ill.2d 77.

On the other hand, if the drunk is frozen to death, or falls into a fire, or is drowned in a freshet, the intervening agency of frost, fire or freshet does not eliminate intoxication as the proximate cause. Schroder v. Crawford, 94 Ill. 357; Jones v. Keilbach, 309 Ill. App. 233. To hold the contrary would defeat the purpose of the statute, as is recognized in all these authorities.

If a drunk gets into a car, later starts the motor, and then goes to sleep or passes out, and becomes asphyxiated, we regard the case as similar to the examples first cited, and directly parallel to the frost, fire and freshet examples. We would say that asphyxiation is appropriately added to that list.

The chain of events relied upon as the cause of action rests partly upon circumstantial evidence, but

132

the circumstances are sufficiently persuasive to make it a question for the jury as to what was the proximate cause, in accordance with the usual rule in such cases. Zahn v. Muscarello, 336 Ill. App. 188, 194; Triggs v. McIntyre, 215 Ill. 369, 374; Weisguth v. Stack, 165 Ill. App. 462.

■ The plaintiffs called as a witness a pathologist who had made an examination of the deceased and caused certain laboratory tests to be made. These defendants contend the court erred in permitting questions and answers whereby the witness testified that carbon monoxide poisoning was the cause of death. There is no error in permitting the medical expert to state the results of his investigation, and it was not an invasion of the province of the jury. The ultimate question for the jury was whether this immediate and effective cause of death was brought about as a proximate result of intoxication. The witness did not testify on that subject.

■■ Errors are also asserted as to the refusal of certain instructions. We have examined the numerous instructions, presented by the several parties, and find that the refused instructions that were correct statements of law, were covered by other given instructions. Others refused were clearly misleading and otherwise erroneous, for example, one would have told the jury that the words in the statute "in whole or in part" do not mean that recovery is allowed for the acts of a partly intoxicated person, and that "part intoxication" will not meet the requirements of the law. The jury was not told the context of the act, where the meaning of the words "in whole or in part" is plain and easily understood. Taking the words out of context and saying they do not mean a certain thing, could only be confusing and cause conjectures as to what they do mean.

Moreover, the act does not speak in terms of degrees of intoxication, as wholly, slightly or partly; it simply

refers to intoxication, which has been defined in various ways, but not by degrees. Osborn v. Leuffgen, 381 Ill. 295; People v. Rewland, 335 Ill. 432.

The remaining point in this brief, and the only point raised by the other defendants, concerns the legal effect of the verdicts. There were a total of 12 forms of possible verdicts submitted to the jury, which came about in this way: as to each of the two plaintiffs there was a form for a plaintiff verdict against both taverns jointly, and two forms in case either tavern was held liable alone without the other. Thus there were 3 forms for each plaintiff, a total of six, and each was accompanied by its appropriate "not guilty" form.

The jury returned all six of the plaintiffs verdicts duly filled out, as follows: for plaintiff Margaret Schwehr $4,000 against all defendants, and separate verdicts for her of $1,000 against the Merrys and $3,000 against the others. For plaintiff Richard Schwehr $8,000 against all defendants, and separate verdicts of $2,000 against the Merrys and $6,000 against the other defendants. The court did not enter judgments on the joint verdicts, but did enter judgments giving effect to the four separate verdicts.

Defendants rely upon the rule that, in a tort action against defendants jointly, there can be no apportionment of damages, the verdict and judgment must be for a single specified amount against all parties found liable with respect to each plaintiff. Cases cited include Koltz v. Jahaaske, 312 Ill. App. 623; Aldridge v. Fox, 348 Ill. App. 96; and others. This is certainly the well settled rule of law that must be applied in this case. It was error for the trial court to enter judgments on the separate verdicts which obviously attempted to apportion the damages in the ratio of 4 to 1.

The brief for the Merrys ignores the joint verdicts returned in this case, as they were ignored by the trial

court. It is argued that, as to the separate verdicts, the plaintiffs, respectively, have the right to elect which verdict they will take, as in the case of Aldridge v. Fox, 348 Ill. App. 96. There Montgomery-Ward and its employee were sued jointly for a tort, and the verdicts were $2,500 against the employer and $300 against the employee. Of course, the plaintiff elected the verdict for $2,500. Also cited is Koltz v. Jahaaske, 312 Ill. App. 623, wherein it was held the trial court, after improper separate verdicts, may permit the dismissal of all but one defendant, and give judgment against him alone. There are numerous other decisions of similar import.

None of these cited cases appear to involve the situation where the jury returns both joint and separate verdicts. To this extent they are not in point. A case with both joint and separate verdicts occurred in Bencie v. Williams, 337 Ill. App. 414. That was a tort action against a policeman and his bonding company. The jury returned a verdict for $5,750 against both defendants, with a separate verdict for $750 against Williams alone, and $5,000 against the surety alone, which was the face amount of the bond as shown by the evidence. The trial court construed the verdicts in the light of the record, and found that the jury had fixed the total damages at $5,750 but limited the liability on the bond to the face thereof, and held Williams liable for the whole amount, jointly up to $5,000 and individually for the balance. Judgment was entered accordingly and this was sustained on review.

We regard the present case somewhat comparable. It is apparent that the jury found the widow's damages were $4,000 and the child's $8,000, and that all defendants were liable. They also attempted to apportion the damages, to place the heavier burden on the tavern last visited and in which there was more drinking. It was not within their authority to do this, but that

135

should not affect the joint verdicts, which were in proper form and in accordance with law.

■ It follows that the appropriate action by the trial court was to enter judgments on the proper verdicts and ignore the improper attempt to apportion. The judgments will be reversed and the cause remanded for that purpose.

■ In Vanston v. Boughton, 71 Ill. App. 627 we find the court saying: "It is not an unusual practice for an appellate court to reverse the judgment of the lower court with directions to enter the proper judgment, and in some instances the costs of this court have been taxed to the appellant." It has been held a number of times that, where the error did not occur during the course of the trial, but only after its conclusion, a new trial will not be ordered, the reversal will only go to the point where the error occurred, so that it may be corrected. Finance Co. of Pennsylvania v. Hanlon, 75 Ill. App. 188; Field v. Winheim, 123 Ill. App. 227; McNulta v. Ensch, 134 Ill. 46. (All of these involved multiple defendants.) The Supreme Court has said: "No error appearing prior to the entry of judgment, the practice in this court is firmly established, even in criminal cases, not to send the case back to the trial court for a venire facias de novo, but simply to enter a proper judgment in the case." Gage v. People ex rel. Kochersperger, 163 Ill. 39.

Appellants, W. V. and Lois Merry, have successfully demonstrated the judgments entered are erroneous. The other appellants have failed in the major portion of their appeal, in that the assigned errors on the trial are not sustained, both judgment notwithstanding and a new trial are denied, which is all they asked for. Therefore, it would not be equitable to tax the costs, or the major portion thereof, against the appellees, even though the form of the mandate is a reversal.

Accordingly, the mandate of this court is that the judgments appealed from are reversed, and the cause

remanded with directions that the trial court enter proper judgments on the joint verdicts for the respective plaintiffs. Costs in this court are taxed one-third to the appellees, and two-thirds to appellants Badalamenti and Eisman.

Reversed and remanded with directions.

CULBERTSON and BARDENS, JJ., concur.