JEAN BOCHENEK, Plaintiff-Appellant, *v.* EDWARD BOCHENEK, Defendant-Appellee.

(No. 55552;

First District—April 17, 1972.

Schwartz & Zaban, of Chicago, (Seymour Zaban, of counsel,) for appellant.

Mr. JUSTICE BURKE delivered the opinion of the court:

Plaintiff filed a complaint for divorce and other relief on January 11, 1969, alleging that defendant was guilty of extreme and repeated mental cruelty toward her without provocation on her part. Defendant filed an answer denying the grounds alleged in the complaint, and trial was had as a contested matter without a jury. At the close of plaintiff's case defendant's motion to dismiss the complaint for want of equity because of failure to establish a *prima facie* case was allowed. Plaintiff appeals.

Plaintiff testified that she and the defendant were married in July 1941 and that a girl and a boy were born of the marriage, aged 23 and 20 respectively at the time of the trial. She resided in a three-flat apartment building owned by her and defendant, located on South Homan Avenue in Chicago, for a period of nineteen years. Plaintiff stated that on several occasions prior to 1959 defendant told her, "Why don't you pack your bags and get out?" and that, as a result, she moved into an apartment in the basement of the building. She stated that although they lived in separate aparements, she and defendant cohabited from time to time and she cooked his meals.

Plaintiff testified that in the fall of 1964 she and defendant had an argument in a cocktail lounge and that she left and walked home alone. She stated that the defendant arrived home before her and locked the door so that it became necessary for her to break the glass in the door in order to gain entrance to the building. She testified that the defendant was waiting for her, an argument ensued, he struck her in the head, and she fell, losing consciousness for a time. Plaintiff further testified that defendant physically accosted her about two months later. She stated that defendant continuously berated her, stating that "he shouldn't have married beneath his level and there wasn't a brain between the three of us, meaning the two children and myself." Plaintiff testified that these statements depressed her.

In October 1968 plaintiff informed the defendant that she wished to purchase a new automobile and that she wished to use their old automobile as a trade-in. She testified that her equity in the old vehicle was in excess of seventy-five per cent, but that title to that vehicle was in the defendant's name "for insurance purposes." She stated that the defendant initially told her "he didn't care one way or another" whether she purchased the new automobile, but that defendant thereafter refused to transfer the title to the old automobile for purposes of the trade-in. She testified that she was thereby forced to re-negotiate the contract for the purchase of the new automobile with the dealership, to her embarrassment. Entered into evidence was a letter from defendant to plaintiff regarding the proposed purchase and transfer of title, berating plaintiff

and employing obscene language. Plaintiff testified that such actions and language on defendant's part made her feel "put down" and made her further feel that she had no rights of ownership in any property that she and defendant owned and to which she had contributed throughout the years of the marriage.

Plaintiff further testified that sometime in 1966 she installed gas heat in the basement apartment and that she paid for it with her own funds. She testified that she worked during the day, and that defendant, who worked evenings and nights, would enter the basement apartment and lower the heat. She stated that when she arrived home from work during the winter months it would take an hour or more to warm up the apartment, during which time she was forced to wear her coat and boots.

Plaintiff testified that as a result of defendant's actions, she developed a condition of extreme nervousness and that she consulted Dr. Frank Yanez in 1967. She stated that she experienced spasms in her stomach and extreme headaches, and that in September 1968 she developed an ear condition and was referred by Dr. Yanez to a specialist. The specialist advised the plaintiff that her ear condition was due to her nervous condition, which caused small blood vessels in the ear area to rupture, in turn causing the earaches. She stated that none of the nervous problems treated by either doctor was the result of an injury or sickness.

Plaintiff further testified that in January 1969 she had an argument with the defendant, during the course of which he accused her of ruining their children and of being responsible for their son's leaving high school. She stated that she became upset and cried, and that she became so nervous that dizziness ensued, she lost consciousness and fell, injuring her spine.

Plaintiff testified that she becomes nervous when in the presence of her husband, that she fears him because she never knows what he will do or say, and that the two children also fear him. She stated that she was forty-seven years of age, that she was not experiencing menopause, and that she in fact continued to have a regular menstrual cycle.

Plaintiff's daughter, Lorraine Bochenek Fischer, testified on plaintiff's behalf and stated that prior to the witness' marriage she lived in plaintiff's apartment because she was closer to plaintiff than to defendant. She testified that defendant appeared indifferent and did not care about the witness' problems. The witness stated that in January 1969 defendant requested her to seek a reconciliation between him and the plaintiff, because plaintiff was under medication and a nervous breakdown appeared likely. The witness told the defendant that he would have to change if he wanted a reconciliation and that he would have to control his temper. She further testified that her mother's condition was deteriorating and

that it became more pronounced during the two years preceding February 1969. She stated that defendant insulted plaintiff's intelligence.

Plaintiff's son, Ronald Bochenek, testified on plaintiff's behalf and stated that in January 1969 his parents engaged in an argument and that he observed his mother crying. The witness stated that at that time his mother asked him if she was the cause of his leaving school or if she was responsible for his getting into trouble with the police, and that he stated to her that she was not. He further testified that he was of the opinion that his problems stemmed from the fact that "I never had a father, nobody to come to or talk to or anything."

The final witness to testify for the plaintiff was her treating physician, Dr. Frank Yanez. Dr. Yanez testified that in September 1968 plaintiff consulted him concerning a nervous condition, and that he later referred her to a specialist with regard to an ear condition she had developed. The doctor testified that the specialist related that the ear condition was caused by nervousness. In January 1969 the witness treated the plaintiff for a fall suffered due to a dizzy spell which plaintiff related came on during an argument with her husband. The witness related that plaintiff's blood pressure was elevated, that he engaged in psychotherapeutic discussions with her, and that he prescribed a medium strength tranquilizer for her nervous condition. The doctor testified that plaintiff's condition "might or could be deteriorating in the future if the same conditions were to exist for any long period of time as existed in the past." The doctor further testified that plaintiff was not aided by the tranquilizer which he had prescribed because her nervousness was not "cut" by the medium strength drug. The doctor related that in his opinion, plaintiff was not experiencing menopause, that she was very upset and nervous, and that he could not find anything organically wrong with her which would cause her condition.

■■ The standard to be applied by a trial court in evaluating evidence in passing upon a motion for a finding is whether the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the moving party that no contrary result based upon that evidence could ever stand. (See *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 495, 510; *Flewellen v. Atkins*, 99 Ill.App.2d 409, 413.) We are of the opinion that the trial court erred in sustaining defendant's motion for a finding, inasmuch as the evidence adduced by the plaintiff made out a *prima facie* case.

■■■ What constitutes mental cruelty depends upon the total circumstances of a given case. Abusive and humiliating treatment, calculated to or of such nature as to torture, discommode or render miserable the life of the opposite spouse, and which actually affects the physical or

mental health of that spouse, is generally considered mental cruelty. See *Howison v. Howison,* 128 Ill.App.2d 377.

██ In the instant case plaintiff's evidence reveals two specific instances, and numerous general instances which could be found to constitute mental cruelty on defendant's part: in October 1968, involving the automobile purchase incident, and in January 1969, involving the argument between the parties where defendant accused plaintiff of ruining their children. There was evidence that defendant continuously entered plaintiff's apartment and turned down the heat, causing plaintiff physical discomfort. There was further evidence that defendant's actions made plaintiff nervous and upset, and her treating physician testified as to that condition. Defendant's motion for a finding should not have been allowed.

For these reasons the decree is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

Decree reversed and cause remanded with directions.

GOLDBERG, P. J., and LYONS, J., concur.