CATHERINE L. EDENBURN, Admr., of the Estate of RUBY ·M. MENDENHALL, *et al.*, Plaintiffs-Appellants, *v.* WILLIAM RIGGINS, d/b/a BILL's *et al.*, Defendants-Appellees.

(No. 72-171;

Third District—August 24, 1973.

*Rehearing denied September 20, 1973.*

Heyl, Royster, Voelker and Allen, of Peoria, (Carle E. Reardon, of counsel,) for appellants.

Robert L. Ellison and Duncan B. Cooper, III, of Rock Island, for appelles.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This appeal results from a dram shop action brought in the circuit court of Peoria County by two separate plaintiffs in two separate counts to recover damages for four minor children for loss of means of support which had been provided by two different persons. After trial by jury a single general verdict in the sum of $40,500 was returned in favor of the plaintiffs and judgment was entered accordingly. The trial court subsequently granted a motion to reduce the damages to the sum of $20,000 and ordered a new judgment in that amount. This appeal stems from the trial court's order reducing the amount of damages. The defendants in this appeal also allege error on the part of the trial court and present issues for review.

The factual situation which gave rise to this appeal is pertinent to some of the issues presented to this court and we therefore set forth the same in detail.

Ronald Mendenhall and Ruby Bee were married on November 19, 1967. At the time of the marriage Ruby had four children by a previous marriage, their names being Erma, Rebecca, Kenneth and Ronald Bee. It is admitted by Ronald that the youngest child might be his own.

The mother Ruby had worked as a nurses aid in a Peoria hospital for ten or eleven years and continued in such employment after the marriage until the family moved to Cuba, Illinois. In 1967 Ruby received wages in the sum of $2,971.88 and in 1968 before moving to Cuba she earned $2,061.60.

The husband Ronald is illiterate and his employment was as a gasoline service station attendant in Cuba where he earned $70 per week. In addition to this job he had additional income which he earned from topping trees, painting television towers and repairing television sets. On occasion he would earn from $200 to $300 per day. It was Ronald's custom to turn over his income to Ruby to pay the bills and care for the children.

From the record it appears that it was approximately four months after the family had moved to Cuba that tragedy ensued when Ronald killed Ruby by shooting her after a day of drinking various alcoholic beverages. A more detailed itemization of Ronald's drinking which culminated with the death of Ruby will be recited as it becomes pertinent to the issues presented in this appeal. Ronald pleaded guilty to the charge of involuntary manslaughter and was sentenced to a term of not less than two nor more than five years in the penitentiary. After Ruby's death Ronald did not provide for the support of her children.

Catherine L. Edenburn, the plaintiff, was appointed as guardian of the deceased Ruby's children, who at the time of the trial were of the following ages: Ronald, 5; Kenneth, 7; Rebecca, 8; and Erma, 12.

The complaint filed in the case before us contained two counts and was commenced pursuant to the provisions of the Dram Shop Act (Ill. Rev. Stat., ch. 43, sec. 135). Count I was brought in the name of the plaintiff as administrator of the estate of Ruby M. Mendenhall, deceased, for the exclusive benefit of the deceased's minor children. The plaintiff alleged that the minor children had lost a means of support, namely their mother, in that she had been killed by an intoxicated person and this count prayed for damages in the sum of $20,000. Count II was originally brought by Ronald Mendenhall and alleged that the children had lost a means of support from himself as a stepfather in that he had been incarcerated in consequence of the actions of an intoxicated person, namely himself. This count also prayed for damages in the sum of $20,000. For reasons which we do not deem to be material to this appeal, Count II was dismissed and an amended complaint was filed which substituted the plaintiff as guardian of the children instead of Ronald Mendenhall in Count II. The complaint then contained the original Count I and the new Count II, and the case proceeded to trial by jury. As previously stated the jury returned a single general verdict in favor of the plaintiff and against the defendants Riggins' and Beneventi's in the sum of $40,500.00.

■■ It is the contention of the plaintiff that the trial court erred when it granted defendants' motion to reduce the jury's verdict and the judgment entered thereon from the sum of $40,500 to $20,000. In making a determination of this question we first direct our attention to the pertinent language of the Dram Shop Act:

"* * * recovery under this Act for loss of means of support resulting from the death or injury of any person, as aforesaid, shall not exced $15,000 for each person so injured where such injury occurred prior to July 1, 1956, and not exceding $20,000 for each person so injured after July 1, 1956. * * * Ill. Rev. Stat., ch. 43, sec. 135.

The precise question presented is whether the statutory provision which we have set forth means that recovery for loss of support resulting from death or injury of any person shall not exceed $20,000 for each person so injured refers to the person furnishing the support or does it refer to the persons losing their means of support. This question was settled by our Supreme Court in the case of *Moran v. Katsinas*, 16 Ill.2d 169, 157 N.E.2d 38. *Moran* determined the legislative intent to be that the statu-

tory limitation of recovery set forth in section 135 of the Dram Shop Act referred to the "provider" of support and not to the person or persons losing their support.

■■■ In the instant case the minor children lost two "providers of support". One "provider" was their mother Ruby Mendenhall, who up until approximately four months prior to her death worked more than ten years as a nurses aid at a Peoria hospital and the other was their stepfather Ronald Mendenhall, who as we have stated worked at various jobs and gave his earnings to his wife to care for the children. In applying the statutory limitation on damages recoverable in this case we look at the language which states "that * * * recovery * * * for loss of means of support resulting from death or injury of any person * * * shall not exceed * * * $20,000 for each person so injured." (Ill. Rev. Stat., ch. 43, sec. 135). The controlling phrase is *for each person so injured* and in Moran that person was defined as the "provider" of the support. As we have stated the minor children involved in the case now before us had two "providers" hence their limitation of recovery is $20,000 per "provider" or a total of $40,000. We deem it to be immaterial in that in the present case those who lost their support from Ruby Mendenhall and Ronald Mendenhall are the same individuals, namely the minor children Erma, Rebecca, Kenneth and Ronald Bee. There can well be a single occurrence which causes injury or death to more than one "provider" of the same dependents. See *St. Clair v. Douvas*, 24 Ill.App.2d 444, 158 N.E.2d 642; *Kelly v. Hughes*, 33 Ill.App.2d 314, 179 N.E.2d 273.

That a single general verdict was returned by the jury rather than separate verdicts on Counts I and II creates an ambiguity in that it is not clear whether the award was based on Count I, Count II, or on both counts. However, this is an ambiguity created by the defendants. The plaintiffs tendered instruction 16 which could have instructed the jury to return separate verdicts on each count and which further provided them a form for their use. The defendants objected to this instruction since they desired a general single verdict, this is what they received and therefore they are estopped from now claiming that it constitutes error. The plaintiffs' assertion that the defendants cannot complain of an error which they have induced the trial court to make is well taken. *City of Waukegan v. Stanczak*, 6 Ill.2d 594, 129 N.E.2d 751.

■■ The defendants assign as reversible error that the jury was improperly instructed and the crux of this contention is that Illinois Pattern Jury Instruction 150.15 is an inappropriate instruction in the instant case. I.P.I. 150.15 defines intoxication in the following manner:

"A person is 'intoxicated' when as a result of drinking alcoholic

liquor there is an impairment of his mental or physical faculties so as to diminish his ability to think and act with ordinary care." The defendants concede that in *Navarro v. Lerman,* 48 Ill.App.2d 27, 198 N.E.2d 159, the reviewing court held it proper to give an instruction defining intoxication in a dram shop case. They further recognize that it was held error not to give I.P.I. 150.15 in *Grant v. Paluch,* 61 Ill.App. 2d 247, 210 N.E.2d 35. However, the defendants argue that the giving of I.P.I. 150.15 constituted error in the instant case since such instruction establishes a standard of "ordinary care" which under the facts adduced by the trial court is not sufficient but that instead an instruction defining intoxication should have been in terms of an inability to conform one's conduct to the requirements of the law, or an inability to refrain from acting recklessly, wilfully or intentionally. We believe that the case of *Navarro* is determinative of this question since it was also a case involving criminal conduct on the part of an intoxicated person, and the reviewing court held that it was proper to give instruction I.P.I. 150.15 for the purpose of defining intoxication. While it was the shooting and subsequent incarceration of Ronald that caused a deprivation of support it must be recognized that these events were proximately caused by his intoxication which is the gist of a dram shop action and hence the jury was properly instructed.

The defendants next urge that the verdict of the jury was against the manifest weight of the evidence. Without making a detailed recital of the facts it is clear from the record that Ronald had been drinking almost continuously from the early afternoon hours of December 7, 1968, to the early morning hours of December 8th when he killed his wife. There was evidence that he became ill and vomited, that he drove the wrong way on a one-way street, that his behaviour was unusual. There was testimony by the defendants and their former bartender as well as testimony of police officers that took Ronald into custody that he was not intoxicated. Ronald himself testified that he was drunk, he stated that "I was drinking all the time." It is clear that there was a conflict of evidence as to whether or not Ronald was intoxicated, but in determining the credibility of the witnesses the testimony of each should be weighed as to possible advantage or disadvantage. It could well be that the trauma connected with the slaying of one's wife would also have a sobering effect so that when taken into custody the slayer would be in a sober condition. These are questions for the jury. (See *People v. Schneider,* 362 Ill. 478, 200 N.E. 321.) The jury determined that Ronald was in fact intoxicated and from the record it is clear that they had presented to them ample evidence to support such a determination and we will not disturb it.

■■ The defendants would argue that the plaintiffs failed to show a causal connection between the intoxication of Ronald and his shooting his wife. It is only where the cause of injury or death would have occurred regardless of intoxication that it can be held as a matter of law the intoxication is not the proximate cause. (*Schwehr v. Badalamenti,* 14 Ill.App.2d 128, 143 N.E.2d 558.) In the case before us it is irrefutable that Ronald killed his wife. There is sufficient evidence to sustain a finding that he was intoxicated and there is no reason to believe that he would have killed her had he not been intoxicated. The circumstances are sufficiently persuasive to make the question of "causal connection" one for the jury and the jury was instructed on this matter. Again we will not invade the province of the jury which determined from ample evidence that intoxication was the proximate cause of the shooting.

■■■ The defendants also contend that there was no competent evidence to substantiate a claim of loss of support by the minor children from their mother. The Dram Shop Act is to be liberally construed to the end that the health, safety and welfare of the people of the State of Illinois shall be protected. (Ill. Rev. Stat., ch. 43, sec. 94.) The children's mother Ruby had long supported her children by working at a hospital. This employment continued until approximately four months prior to her death. Means of support includes not only the necessities of life but also the comforts of life as well as the capacity for earning money. We would be denying a liberal construction of the Dram Shop Act if we were to hold that there was not competent evidence to sustain a finding of loss of support by the children when their mother was slain. The amount of the mother's income for the years 1967 and 1968 was admitted into evidence and provided an adequate basis for estimating damages.

■■ Contrary to the contention of the defendants we believe that the evidence also sustains a loss of means of support to the children from their stepfather Ronald. While not legally obligated to support the children, Ronald had nevertheless done so. He made voluntary contributions from his earnings as a service station employee, tree topper, painter and television repairman. Loss of means of support includes loss of income which results from the termination of voluntary contributions. (*Lowrey v. Malkowski,* 23 Ill.App.2d 371, 163 N.E.2d 528.) We do not deem it material that Ronald, now free from incarceration and remarried, could still support the minor children as he did prior to the death of their mother. He has chosen not to do so and they have therefore suffered a loss of means of support, and as has been previously determined such loss was occasioned in the first instance by Ronald's intoxication.

The defendants further argue that as the result of a plaintiffs' instruc-

tion the case was not submitted to the jury on the basis of loss of means of support resulting from Ronald's incarceration in the penitentiary even though that was the posture of the pleading, and therefore the cases went to the jury only on the theory of the loss occasioned by the death of Ruby. Defendants urge that since the only loss of means of support submitted to the jury related to Ruby's death then it must be presumed that the jury followed the instructions given and that the trial court was therefore required to reduce the verdict to the sum of $20,000.

■■ We cannot concur with this contention of the defendant since the record in this case makes it abundantly clear that it was not the incarceration of Ronald that caused the loss of support to the minor children. His incarceration stemmed from his criminal conduct which was caused by his intoxication. It was Ronald's intoxication, not his incarceration, which led to the destruction of the family unit with the resultant effect that the minor children suffered a loss of support from both their mother Ruby and their step-father Ronald. The jury was aware that the trial was proceeding on two counts and in both the opening and closing arguments to the jury, counsel for plaintiff made it clear that loss of support was claimed from both Ruby and Ronald. In considering instructions, the test is not whether each individual instruction is free of every technical objection which may be directed against it but rather whether the instructions when considered together were sufficiently clear so as not to mislead the jury. (*Robinson v. Workman,* 15 Ill.App.2d 25, 145 N.E.2d 265.) After examining the record in its entirety we fail to find any basis to support a conclusion that the jury was misled and therefore do not agree with the defendants' contention as to the significance of the plaintiffs' instruction on Count II of the complaint.

■■■■ Lastly the defendants present for review a question of legislative interpretation in that they contend that the trial court erred in failing to give retroactive application to a 1971 amendment to the Dram Shop Act. At the time the plaintiffs filed their lawsuit the Dram Shop Act gave a remedy to innocent persons against tavern keepers who by selling or giving alcoholic liquor caused intoxication *in whole or in part* (emphasis supplied). Effective August 1, 1971, the Dram Shop Act was amended so that the provisions pertinent to issue now before us reads as follows:

> "Every person who is injured in person or property by any intoxicated person, has a right of action in his own name, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication of such person. * * * An action shall lie for injuries to means of support caused by an in-

toxicated person or in consequence of the intoxication, habitual or otherwise, of any person resulting as aforesaid." Ill. Rev. Stat., ch. 43, sec. 135.

The effect of this amendment removed the words "in whole or in part" so that thereafter liability was to be imposed only upon the person who caused the intoxication rather than on any person who contributed to such a condition. The instant lawsuit was tried after the effective date of the 1971 amendment which eliminated the phrase "in whole or in part" and the defendants are of the opinion that the amendment should have been given retroactive effect by the trial court. In support of their position they rely on the holding in *Orlicki v. McCarthy*, 4 Ill.2d 342, 122 N.E.2d 513, where our supreme court held an amendment to the Dram Shop Act retroactive which reduced the statutory limitation during which time a suit could be filed. In *Orlicki* the supreme court stated, "On the basis of the foregoing authorities it is our judgment that the time limitation amendment should be retroactively applied *on the ground that the legislature so intended, and that it is procedural in character.*" (Emphasis supplied.) In *Orlicki* the supreme court recognized that the amendment in question was one dealing with a procedural matter. Amendments pertaining to procedure can and are frequently given retroactive application as was done in *Orlicki*. See *Ogdon v. Gianakos*, 415 Ill. 591, 114 N.E.2d 686. In the instant case we are confronted with an amendment that is substantive in character in that it pertains to that part of the law which creates, defines and regulates rights as opposed to law which prescribes methods or procedures to be followed in enforcing those rights. Since the 1971 amendment to the Dram Shop Act is of a substantive nature a retroactive application will be given to it only when it is manifest that the legislature intended that it should so operate. In *Orlicki* our supreme court determined that it was the intent of the legislature that the amendment relating to the statute of limitations should be given retroactive application since its purpose was to correct an existing evil, to wit, the prolonged liability of unsuspecting dram shop owners. In the case before us the 1971 amendment can only be interpreted as being a deterrent to that dram shop owner who would continue to ply a customer with liquor until he became intoxicated since under the Dram Shop Act prior to the amendment he was exposed to liability whether he served one or many drinks to such an individual. Giving retroactive application to the 1971 amendment would have no effect on curing such evils of the type described which occurred prior to the amendment's adoption. Such evils were fait accompli and could not be undone by a retroactive application of a legislative enactment. We find it impossible to locate any intent on the

part of our legislature to give the 1971 amendment to the Dram Shop Act retroactive application as urged by the defendants.

The plaintiffs in their brief acknowledge that the maximum which they can recover in this case under the provisions of the Dram Shop Act is the sum of $40,000 and request that this court remand this case to the trial court with directions to enter a judgment in the amount of $40,000 rather than in the sum of $40,500 as returned by the jury. We agree with the plaintiffs that the maximum recovery in this case cannot exceed $40,000.

For the foregoing reasons the verdict of the jury in this case finding the defendants liable under the Dram Shop Act should be sustained and the order of the trial court reducing the amount of the judgment to $20,000 should be reversed and this cause is remanded with directions that the circuit court of Peoria County enter a judgment for the plaintiffs and against the defendants in the sum of $40,000.

Affirmed in part and reversed in part and remanded with directions.

STOUDER and DIXON, JJ., concur.