Esther Bireline *et al.*, Plaintiffs-Appellees, *v.* Glen Espenscheid *et al.*, Defendants-Appellants.

(No. 73-22;

Third District—November 30, 1973.

SCOTT, J., dissenting.

James E. Bowles, of Heyl, Royster, Voelker & Allen, of Peoria, for appellants.

R. Lawrence Ball, of Peoria, for appellees.

Mr. PRESIDING JUSTICE DIXON delivered the opinion of the court:

The plaintiffs, Esther Bireline and her husband Robert S. Bireline brought this action pursuant to the Dram Shop Act. After a jury trial the

Circuit Court of Tazewell County entered judgment on the verdicts in favor of each plaintiff. Defendants appeal from those judgments.

On June 28, 1969 plaintiffs were returning from Peoria to their home in Washington, Illinois, proceeding easterly on the south lane of the state highway when an automobile driven by Charles McGonagle in a westerly direction crossed over the center line onto the south half of the highway and collided head-on with the Bireline car.

McGonagle had a passenger in his automobile by the name of Pete Ramirez. McGonagle did not testify at the trial as he disappeared shortly after the accident and could not be located. Ramirez gave an evidence deposition on June 6, 1972.

On the afternoon of June 28, 1969 he and McGonagle first drank a six pack at his apartment and then both decided to drive to Metamora. McGonagle stopped at the Lake Club on the left side of the highway as one proceeds toward Metamora. Ramirez specifically named the Lake Club as being the tavern where they stopped and he described in detail the entrance to the Lake Club as well as the interior and exterior of the premises. McGonagle drank three or four bottles of beer in the Lake Club before they went on to the Parr residence in Metamora. After remaining in the Parr residence for fifteen or twenty minutes McGonagle drove back toward Peoria and again stopped at the Lake Club where he again drank three or four more beers.

McGonagle continued to drive when he and Ramirez left the Lake Club and proceeded toward Peoria. Shortly prior to the accident McGonagle crossed the center line of the two lane highway several times as well as getting off onto the shoulder of the road. Ramirez reprimanded him for the manner in which he drove and testified that McGonagle was "feeling his beer", "pretty well on the way to being intoxicated" and his speech was "kind of slurry".

Defendants first contend that the trial court erred in failing to give retroactive application to a 1971 amendment to the Dram Shop Act which eliminated the words "in whole or in part" from the Act.

■■ The cause of action in this case arose on June 28, 1969. The complaint was filed June 22, 1970. On similar facts we recently held in *Edenburn v. Riggins*, 13 Ill.App.3d 830, 301 N.E.2d 132, that the 1971 amendment was not given retroactive application.

An offer of proof by defendants showed that most of the medical expenses incurred by Bireline were paid by his health insurance carrier (Group Health Insurance).

Defendants agree that injury to property under the Dram Shop Act occurs when either payment is made or responsibility for payment is in-

curred pursuant to the Family Expense Act. They argue that "although no payment of these expenses is necessary in order to recover, we submit that the theory of the court in allowing recovery for these expenses without prior payment is that any moneys recovered would be to satisfy this obligation, not to give the plaintiff a double recovery, and that 'Collateral Source' is not involved." They cite no appropriate cases. "Collateral Source" is indeed involved. It is the rule of damages that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable. 22 Am.Jur.2d Damages, Sec. 206.

██ The general rule is that the tortfeasor cannot decrease his damages by the amount of hospitalization or medical insurance payments received by the injured party where the tortfeasor did not contribute to the payment of the premiums of the insurance. 22 Am.Jur.2d Damages, Sec. 210. *Geisberger v. Quincy*, 3 Ill.App.3d 437, 441; *Grant v. Paluch*, 61 Ill.App.2d 247, 260.

At the time the evidence deposition was taken the witness Ramirez was asked if he could identify the building operated as the Lake Club on June 29, 1969. To conclude the evidence deposition of Ramirez he was taken to the accident scene and then to the site of the former Lake Club where he identified the building. The defendant's attorney inquired as to whether this would be "put on the record" and upon being advised that it would he replied, "go ahead". He further remarked that there was no point in his going along. He made no objection.

The trial defense counsel (another member of the firm) objected to the admission of the testimony of Ramirez taken at the accident scene and at the site of the former Lake Club. The trial court overruled the objections stating that "defense counsel had every opportunity to be present if he so desired and had waived any objection."

Defendants at the trial raised 3 objections. First, that leading questions were asked and answered. Second, that the testimony was improper redirect examination as being beyond the scope of defendant's cross-examination. Third, that the trial court allowed a picture attached to the evidence deposition, and identified as the building where the Lake Club was located in June, 1969, by Ramirez, before such picture was developed to be admitted into evidence.

As to the third contention the record shows that it is simply not true. The record shows that a photograph of the Dahl Auto Salvage building (formerly the Lake Club) was taken by the photographer on June 6, 1972 in the presence of Ramirez and was subsequently attached to the evidence deposition of Ramirez and was marked for identification as

Plaintiff's Evidence Deposition Exhibit 3. *At no time did the jury see this Exhibit 3 nor was it ever offered in evidence or shown to the jury.*

The photograph which was introduced into evidence was Plaintiff's Exhibit 5. The foundation proof for it was made by Louis Cornish, a defendant, the owner of the building.

■■ As to the first contention that leading questions were asked and answered it is obvious from a reading of 211(a)2 below that such objection must be made at the time of the taking of the deposition.

Supreme Court Rule 211(a) pertaining to depositions provides in pertinent part:

> "(1) Grounds of objections to the * * * admissibility of testimony which might have been corrected if presented during the taking of the deposition are waived by failure to make them at that time; * * *.
>
> (2) Objections to the form of a question or answer * * * which might be corrected if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition."

In *Moore v. Jewel Tea Co.*, 116 Ill.App.2d 109, 131, the court said; "Thus the rule requires objections to be made as to the form of questions or admission of testimony which might have been corrected at the time of the taking of the deposition or the objection is waived. * * * Since it was not made at the taking of the deposition, this objection was waived."

On appeal (*Moore v. Jewel Tea Co.*, 46 Ill.2d 288, 298), the Appellate Court was affirmed. Also, see 16 I.L.P. Deposition, Sec. 52 and 53.

As to the second contention defendants argue that Supreme Court Rule 206(c)(2) is controlling. Plaintiffs contend that there was a waiver and cite Rule 206(e) as well as 211(c) above.

Supreme Court Rule 206(c)(2) provides:

> "In an evidence deposition the examination and cross-examination shall be the same as though the deponent were testifying at the trial."

The Historical and Practice Notes to Rule 206(c)(2) state,

> "When the deposition is an evidence deposition, cross-examination and impeachment are governed by the common-law rules concerning examination of witnesses * * *." (S.H.A. ch. 110A, sec. 206(c), at 151 (1968)).

The same Rule 206(e) provides in pertinent part:

> "Objections made at the time of the examination * * * to the manner of taking it,

to the evidence presented,   *   *   *
and *any other objection to the proceedings, shall be included in the deposition.* Evidence objected to shall be taken subject to the objection." (Emphasis added.)

I.L.P. Depositions, Sec. 52 states, "an objection to a deposition must be made in apt time, and objections to defects of a character which could be obviated or corrected should be made before trial and cannot be first raised at the trial, since this deprives the party taking the deposition of the opportunity to make a timely correction.   *   *   *   It has been held that objections based on the evidence in depositions should be made before the trial and not at the trial since they may be deemed to have been waived where there is such delay in raising the point involved."

■■ The record here shows that the witness Ramirez had moved to El Paso, Texas after his discharge from the hospital in 1969. He was brought to Peoria from Texas in order that his evidence deposition could be taken. He was the only witness to the drinking activities of McGonagle. Had he testified in person at the trial he certainly could have been allowed to identify the premises. (The defense conceded that the examination would be proper should the witness be here "in court".) The fact that he had a recent look to refresh memory while going to the site would certainly not render his testimony inadmissible. Some witnesses drive by the scene of an accident every day of their lives.

■■ The taking of a deposition must be at the time and place specified in the notice thereto or to which it may have been regularly and properly adjourned. A disregard of this requirement, *unless waived,* will render the deposition vulnerable to a motion to suppress it. (*Ward Pump Co. v. Industrial Comm.,* 302 Ill. 199.) However, the motion to suppress must be made in apt time and before trial. (*In re Kettles,* 365 Ill. 168.) A motion to suppress is not necessary to preserve an objection seasonably made. S.H.A. ch. 110A, sec. 211, p. 162 (1968).

For the above reasons the judgments of the Circuit Court of Tazewell County are affirmed.

Affirmed.

STOUDER, J., concurs.

Mr. JUSTICE SCOTT dissenting:

I cannot agree with the majority opinion since I am of the opinion that the taking of the witness Ramirez to the scene of the accident and then to the building which formerly housed the defendant Lake Club was so violative of our procedure regulating the taking of depositions

that such action on the part of the plaintiffs' attorney constitutes reversible error.

Supreme Court Rule 206(c)2 provides:

"In an evidence deposition the examination and cross-examination shall be the same as though the deponent were testifying at the trial." Ill. Rev. Stat., ch. 110A, Sec. 206(c)2.

If Ramirez had been testifying during the course of a trial there is no question but what he would have been prohibited from leaving the witness stand for the purpose of journeying to a tavern for the purpose of refreshing his memory or identifying the establishment as the site of the alleged violation of the Dram Shop Act. It was the defendant's theory of defense in this action that they did not sell or give alcoholic liquors to McGonagle on the evening before the accident and consequently the identification of the establishment that did dispense such beverages was a crucial issue in the case.

The majority opinion is to the effect that such an irregularity is waived unless the objection to such procedure is included in the deposition. With this contention I cannot agree since the prohibition of a witness leaving the witness stand and journeying to a location outside the court room for the purpose of refreshing his memory is so violative of our manner of conducting a trial that it cannot be waived.

The plaintiffs argue that the attorney for the defendants is an experienced trial lawyer and therefore should have perfected a proper objection. The defendants' attorney upon being advised that the witness Ramirez was going to be taken to the location of the former Lake Club for purpose of identifying the building stated "there was no point in his going along and being a party to suborning perjury."

The error committed by the attorney for the plaintiffs is so violative of the fundamentals of trial procedure that I do not believe it can be waived and the attorney for the defendants had every reason to believe that the deposition hearing had ended when Ramirez proceeded to the location of the former Lake Club. The actions of Ramirez subverts the rules of evidence as well as our Supreme Court Rule 206(c)2 and should not be condoned by this court.