CAROL JACKSON, Individually and for the use and benefit of Debra Ann Jackson, a Minor, Plaintiff-Appellant, *v.* CHARLES NAVIK *et al.*, d/b/a Helvitia Hotel, *et al.*, Defendants.—(WALTER KOESTER, a/k/a Walter Kessler, d/b/a Last Resort Lounge, Defendant-Appellee.)

Second District (2nd Division)   No. 74-375

Opinion filed April 2, 1976.

Joseph R. Curcio and Sidney Z. Karasik, both of Chicago, for appellant.

William G. Rosing and James T. Magee, both of Rosing & Carlson, of Waukegan, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This was an action under the Dram Shop Act for loss of means of support by the wife and minor child of an intoxicant who had imbibed numerous drinks at a series of taverns starting in the morning of the occurrence at defendant's "Last Resort Lounge," went boating and suffered a quadriplegia after diving from the boat in shallow water. The action which arose in 1968 was tried on the theory that the drinks imbibed at defendant's tavern caused the intoxication "in whole or in part" and that the dive from the boat was "in consequence" of that intoxication. In a second count plaintiff's wife alleged that she suffered damage to property and was compelled to expend money for her husband's medical care and treatment. The action was tried without a jury and at the close of plaintiff's case the circuit court of Lake County granted defendant's motion for a finding in his favor and dismissed the action.

Plaintiff contends that the evidence adduced made a prima facie case for plaintiff and the court erred in allowing defendant's motion and entering judgment for defendant.

Section 64(3) (formerly 64(5)) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 64(3)) provides for motions for a finding, judgment or decree at the close of plaintiff's case in nonjury cases. It provides that in ruling on the motion the court shall weigh the evidence, and if the ruling on the motion is favorable to the defendant, a judgment or decree dismissing the action shall be entered. This permits the trial judge, at the close of plaintiff's case, to evaluate the evidence and determine the credibility of witnesses.

■■ On appeal, the reviewing court must examine the evidence, and in the light of these holdings, determine whether the trial court, after weighing the evidence, erred in deciding that plaintiffs failed to make a prima facie case. In determining the propriety of the trial court's ruling on a motion based on section 64(3) the reviewing court should not disturb the findings of the trial court unless such findings are manifestly erroneous. *Bilyeu v. Plant,* 75 Ill. App. 2d 109, 118-19.

"By use of the phrase, 'weigh the evidence,' in this context, the Civil Practice Act requires the trial judge, at the close of the plaintiff's case, to evaluate the evidence by determining the credibility of the witnesses, reasonable inferences to be drawn from their testimony, and, in general, the weight and quality of the testimony, in order to conclude whether or not the evidence to that point of the trial has made out a *prima facie* case in favor of plaintiff." *De Bello v. Checker Taxi Co.,* 8 Ill. App. 3d 401, 404.

Until 1969, the trial judge was required to view the evidence and all reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiff and then decide whether it was sufficient to support the plaintiff's cause. (See *Brubaker v. Gould,* 34 Ill. App. 2d 421, 440-50.) In

1969 in the case of *Miller v. Heller*, 106 Ill. App. 2d 383, 393, the court adopted the dissent in *Brubaker* as the obligation of the trial court in weighing the evidence in a chancery case. In 1969 in a law case the court in *Allfree v. Estate of Rosenthal*, 113 Ill. App. 2d 90, adopted the *Brubaker* dissent. By 1973 the court in *Chappell v. Juergens*, 11 Ill. App. 3d 469, 473, stated, "It is now well settled that a trial judge may weigh the evidence    *    *    *    and he need not view the evidence in the light most favorable to the plaintiff."

Appellant in the instant case contends that the *Pedrick* rule (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510) is applicable to the issue before us. In *Fisher v. City of Aledo*, 23 Ill. App. 3d 190, 192, it was held that it was not. But see *Bochenek v. Bochenek*, 5 Ill. App. 3d 65, 68, where the *Pedrick* rule was suggested as an analogous standard.

■■ Our courts have spoken expressly in terms of such evidence as making "a prima facie case" but they have not defined their meaning. It is at least arguable that the words were not employed in their primary sense. Ballantine's Law Dictionary defines "prima facie case" as "A case supported by sufficient evidence to warrant submission to the jury or trier of the fact and the rendition of a verdict or finding in accord therewith. A cause of action or defense sufficiently established by a party's evidence to justify a verdict in his favor, provided the other party does not rebut such evidence." Also see *Morrison v. Flowers*, 308 Ill. 189, 195; 32A C.J.S. *Evidence*, §1016, at 626 (1964) and "Prima Facie Case—Dismissal," Annot., 55 A.L.R. 3d 272, 274 (1974). The Federal courts pursuant to their amended Rule 41(b) of the Federal Rules have held or recognized that a trial judge acting pursuant to that Rule, may grant a motion for dismissal of a nonjury suit at the close of the plaintiff's evidence, *even where such evidence is sufficient in quantum and quality to make out a prima facie case*. Our statute although similar in many respects to Rule 41(b) of the Federal Rules differs significantly in omitting to provide specifically that upon the motion a trial court may determine the facts.[1] Our courts have until recently interpreted our statute as precluding the trial court from dismissing at the close of plaintiff's evidence where such evidence is sufficient to make out a prima facie case. For example see *De Bello*, 8 Ill. App. 3d 401, 405, where the court stated, "In our opinion, the evidence presented by plaintiff did tend to establish all the necessary elements of a prima facie case." Six months later the same court in a case where the issue was squarely raised (*Hawthorn Mellody Farms Dairy, Inc. v. Rosenberg*, 11 Ill. App. 3d 739, 744), concluded that the trial judge after weighing evidence (including any that may be favorable to defendant) which neces-

---

[1] Rule 41(b) declares that on a defendant's motion at the close of plaintiff's evidence "in an action tried by the court without a jury the court as trier of the facts may then determine them    *    *    *."

sarily requires the court to draw reasonable inferences therefrom, determine the credibility of witnesses, *and then not simply decide whether the plaintiff has made out a prima facie case*, but make a final determination and enter judgment for defendant if the plaintiff has not met his burden of proof by preponderance of the evidence.

Not long thereafter some cases retreated to the prima facie standard: see *Gray v. Schottmiller*, 18 Ill. App. 3d 812, 815; *People ex rel. Scott v. Convenient Food Mart, Inc.*, 21 Ill. App. 3d 97, 110; *Rey v. Rey*, 23 Ill. App. 3d 274, 276.

The last expression to date is in *Jackson v. Spivey*, 26 Ill. App. 3d 670, 674, where the court quoted extensively from the *Hawthorn Mellody* case apparently with approval.

At any rate, in support of their motion the defendants herein posed the question to the trial judge as follows: whether as a matter of law, plaintiff has presented a prima facie case for recovery such as to withstand defendant's motion.

■■ So in ruling on the motion herein the trial court was required to evaluate evidence by determining credibility of witnesses, reasonable inferences to be drawn from their testimony, and, in general weight and quality of testimony, in order to conclude whether or not evidence to that point of trial made out a prima facie case in favor of plaintiff.

### Count i

In the instant case the trial judge made a finding, " * * * The Court, however, feels there is not sufficient proof of any intoxication on the part of the injured party at the time he left the defendant's place of business, to wit, Last Resort Lounge".

Prior to an amendment which became effective on August 19, 1971, the language of the Dram Shop stated " * * * causes the intoxication [in whole or in part]² * * *."

The language of the statute "in whole or in part" is used with reference to the persons who sell or give the liquor. The intoxication may be produced by liquor sold by one or by many persons, but when produced, all who in whole or in part cause the intoxication are liable. (*Neuerberg v. Gaulter*, 4 Ill. App. 348, 350.) Did the alcoholic liquor served to Jackson in defendant's tavern contribute in some degree, no matter how slight, to Jackson's subsequent intoxication? (*Osborn v. Leuffgen*, 381 Ill. 295, 298.) As stated in *Lichter v. Scher*, 11 Ill. App. 2d 441, 452, " * * * the dramshop keeper, may become liable even though the sale was made to a customer when he was wholly sober, if the customer thereafter by drinks purchased elsewhere became intoxicated."

---

² The bracketed words were eliminated by the 1971 amendment which has been held not to be retroactive. *Edenburn v. Riggins*, 13 Ill. App. 3d 830.

Jackson's testimony showed that he began drinking between 11 and 12 o'clock at the defendant's tavern. He was sober on arrival, and had not eaten anything that morning. He met his friend Knudson and began drinking Vodka and 7-Up, he could not recall the exact number of drinks but it was more than one and that he and Knudson alternated in buying drinks. He was "feeling good" when they left the tavern. Knudson testified that Jackson had 4 or 5 drinks of Vodka and 7-Up at defendant's tavern, and that Jackson was not sober when they left to go to the Helvitia where they resumed drinking. Jackson said he had 10 to 15 drinks there. Knudson said 4 or 5. Jackson there bought a bottle of Vodka which was consumed on his boat by Jackson, his brother and Knudson while enroute to the Arbor. They were refused service at the bar of the Arbor but a second bottle of Vodka was purchased there and on the trip from the Arbor to the sand bar was about three-quarters consumed. The accident happened between 3 and 4 o'clock in the afternoon the same day.

■■ We believe the judge's finding on this point to be against the manifest weight of the evidence.

The court also made a finding:

> "That the proof failed completely to show a casual connection between the injury complained of and whatever accident might have contributed thereto.   *   *   *"

Jackson drove his boat to a sand bar on the north end of Chain of Lakes where he anchored. A group began swimming. The group in Jackson's boat dropped into the water. Jackson then dove into the water. He testified:

> "I dove from the back of the boat and I hit—I dove into shallow water and I hit the bottom of the sandbar, hit the sandbar and as a result I drowned.   *   *   *   I was still conscious. I had busted something. I couldn't move to get my head above water. I could see light but I could not get my head above the water line to catch air and as a result I did drown, or at least I lost consciousness."

His next memory was waking up in an ambulance. He could not move his arms or legs.

Knudson testified that his first knowledge that Jackson had been injured was when "something passed me under the water and I reached down * * * it was a human body and it was Mr. Jackson, and he was totally unconscious and not breathing."

With the aid of some swimmers Knudson put Jackson into a rowboat and gave him mouth to mouth resuscitation in the boat until the rescue squad arrived.

Jackson was paralyzed from the neck down. He regained slight movement in his right arm and later in both arms. He spent months in hospitals. The total medical cost was about $100,000. From the time of the incident

to time of trial he was confined to a wheel chair. He never returned to his former employment. At time of trial he had no hand function, could not walk. He had no motion in his legs, but slight motion in his arms and neck.

■■ The plaintiff in an "in consequence case" as here has the burden of proving that Jackson's intoxication was the proximate cause of his injury. The question whether the accident was proximately caused by intoxication is one of fact to be determined in the light of the particular circumstances. (*Cox v. Hrasky*, 318 Ill. App. 287.) The question must be determined by the application of common sense to the facts of each particular case. *Sparks v. Scharlaw*, 171 Ill. App. 155.

Plaintiff's case indicated that Jackson was a fairly good swimmer and diver, that he had been to the sand bar in Lake Catherine before and had engaged in the same type of swimming and diving from the boat, that he was aware of the depth of the water just prior to his dive.

Defendants argued in trial court and here that the dive off the boat would have been made with or without intoxication and thus intoxication could not be the proximate cause of plaintiff's injury in this case. They rely only on *Danhof v. Osborne*, 11 Ill. 2d 77. In that case the intoxicated person was deliberately attacked by a sober person for reason wholly unrelated to the intoxication. *Schwehr v. Badalamenti*, 14 Ill. App. 2d 128, 131-32, explains,

> "However, it does not follow that intoxication must be the sole cause of the injury. In a death case, it is not the rule that death must have been caused merely by alcoholic poisoning. In most cases the death or injury is directly caused by some other agency, but intoxication is held the proximate cause, because the person could not cope with conditions as he could have if sober.
>
> Examples are: [citations].
>
> These and many other cases show: it is only where the cause of injury or death would have occurred regardless of intoxication that it can be held as a matter of law the intoxication is not the proximate cause. If the intoxicated person is killed by lightning, or by the assault of a highwayman or burglar, or other means having no logical relation to the drinking, then intoxication cannot be the proximate cause. [Citations.] If a person in company with another man's wife is assaulted in jealous fury by the irate husband, who has not been drinking, drinking by the injured party is not the proximate cause. Danhof v. Osborne, 11 Ill. 2d 77.
>
> On the other hand, if the drunk is frozen to death, or falls into a fire, or is drowned in a freshet, the intervening agent of frost, fire or freshet does not eliminate intoxication as the proximate cause. [Cit-

ations.] To hold the contrary would defeat the purpose of the statute, as is recognized in all these authorities."

In the instant case a headfirst dive into a sand bar was the logical cause of Jackson's trauma. There is an inescapable conclusion that considering the great quantity of alcohol imbibed by him that he suffered "an impairment of his mental facilities so as to diminish his ability to think and act with ordinary care." (*Edenburn v. Riggins*, 13 Ill. App. 3d 830.) It was not plaintiff's burden to show that the intoxication was the only cause of Jackson's injury. *Schwehr v. Badalamenti*, 14 Ill. App. 2d 128, 131.

Here a drunk takes a headfirst dive into a sand bar, in an area with which he is familiar, and then suffers a paraplegic injury. It is difficult to perceive what more evidence is required to sustain the burden of proving causal connection. The usual burden of proof would seem to be no greater than to show that it was more probable that the event was caused by intoxication than that it was not. See IPI 2d No. 21.01.

Even if, arguendo, *Jackson* was injured "in getting the unconscious body from the water into the boat and then from the boat to the shore,"[3] such "intervening cause" would not preclude recovery. *Schwehr v. Badalamenti*.

■■ We believe the trial judge's finding on this point to be against the manifest weight of the evidence.

The court stated, "The Court was not impressed by the argument that medical testimony to show causal connection between the alleged incident and the injury was not necessary   *   *   *."

Medical opinions as to the cause of injury are competent evidence, because the average person knows little of physiology or the other sciences involved and usually cannot determine the precise relationship between an event and a bodily condition that appears at a subsequent time. Granted that this medical testimony is admissible, does it then become essential to the plaintiff's case? May a plaintiff, whose chain of causation includes medical facts, leave the interpretation of those facts solely to the trier of the facts, without offering a medical opinion to support it?

■■ On medical matters on which laymen are competent to judge, no expert testimony is required to permit a conclusion as to causation. 65A C.J.S. *Negligence* §244(4) (1966) states,

"Medical testimony is not necessary to prove the causal connection where the connection is clearly apparent from the illness and the circumstances attending it." Also see *Haberer v. Moorman Manufacturing Co.*, 341 Ill. App. 521: *Patargias v. Coca-Cola Bottling Co.*, 332 Ill. App. 117; *Palmer v. De Filippis*, 321 Ill. App. 186; *Hyatt v. Cox*, 57 Ill. App. 2d 293; *Jensen v. Richardson*, 93 Ill. App. 2d

---

[3] There is not a scrap of evidence that this happened.

237; *Hiatt v. Finkl*, 132 Ill. App. 2d 92; *Turner v. City of Chicago*, 95 Ill. App. 2d 38, 39-40; *Wiacek v. Hospital Service Corp.*, 15 Ill. App. 3d 698, 701.

Where the injury complained of is remote in time from the accident or the condition is one that is shrouded in controversy as to origin, such as the intervention of either a prior or subsequent injury or disease, layman testimony may be insufficient to establish a prima facie showing of causal relationship. (*Hyatt v. Cox*, 57 Ill. App. 2d 293, 299.) Some courts have added a requirement that the symptoms of the injury be objective rather than subjective in order that lay testimony satisfy the quantum of proof required to make a prima facie case. Illinois has not added that requirement.

Our Supreme Court has, at least twice, held, "it was not necessary that causation be established [by] a medical witness." *Gubser v. Industrial Com.*, 42 Ill. 2d 559, 564; *Union Starch & Refining Co. v. Industrial Com.*, 37 Ill. 2d 139, 144.

Though the courts have tended to construe claims under the Workmen's Compensation laws rather liberally the quantum of proof required is the same as that in suits under general tort law.

We do not believe that an opinion of a medical expert was required in order for plaintiff to make a prima facie case herein.

The trial court stated that because "Jackson testified that he had between 10 and 15 drinks at the Helvitia Hotel but Knudson testified to a maximum of 4 or 5 drinks were had at the Helvitia, the court did not feel that Jackson was honest and forthright in his testimony."

The trial court is the sole judge of the credibility of the witness Jackson but even assuming that Jackson was in error on this point we see no reason to discredit the entire testimony presented by plaintiffs.

We have reviewed the evidence presented and find that as to Count I the plaintiffs did in fact present a prima facie case and we therefore find the judgment of the trial court as to Count I to be against the manifest weight of the evidence. We believe that in this proceeding the judgment as to Count I should be reversed and the cause remanded for a new trial before a different judge.

### COUNT II

■■ The trial court found "That the complaint has not been sufficient to allege an injury to the property of the wife since there was no allegation in the complaint that she was called upon to expend any of her own moneys or funds nor any proof on that point."

Count II was an "in consequence" complaint brought for damage to property. Mrs. Jackson invoked the Family Expense Act and alleged that she suffered damage to her property in that she spent money for Jackson's treatment and became liable for future medical care. Throughout she has

stated, "plaintiff premised her theory of recovery on the 'in consequence' of intoxication and *did not* allege that she was injured in her property * * * 'by' an intoxicated person."

At trial she did not prove some direct physical injury to her tangible real or personal property but did attempt to prove that she had paid considerable medical expenses from joint savings, that through her employment she had been supporting the family, and she had legal liabilities under the Family Expense Act. In short, she was attempting to prove "injury to her property." *Fortner v. Norris*, 19 Ill. App. 2d 212, 216; *Shepherd v. Marsaglia*, 31 Ill. App. 2d 379, 386; *Kelly v. Hughes*, 33 Ill. App. 2d 314, 317.

Prior to 1955 all "injury to property" cases of this nature had been brought under the "in consequence theory." Lousberg, *Dramshop: Injury to Property*, 51 Ill. B.J. 810, 815 (1963).

In 1955 the Dram Shop Act was amended (Ill. Rev. Stat. 1955, ch. 43, par. 135), and the pertinent portion of the amended act as it now reads is:
>"Every person who is injured in * * * property by any intoxicated person, has a right of action in his own name * * *."

Ill. Rev. Stat. 1975, ch. 43, par. 135.

Section 14 of article VI of the Dram Shop Act creates two separate and distinct causes of action. One gives a remedy to those injured "in person or property by any intoxicated person" and the other creates a cause of action "for injuries to means of support caused by an intoxicated person or in consequence of the intoxication, habitual or otherwise, of any person * * *." The 1955 amendment to this section separates the action for injuries to person or property "by an intoxicated person" from injuries to loss of means of support which can be occasioned either "by an intoxicated person" or "in consequence of the intoxication * * * of any person." *Hernandez v. Diaz*, 31 Ill. 2d 393, 397. See 1958 U. Ill. L. F. 191, 194.

The 1955 amendment by removing the words "or in consequence of the intoxication * * *" limited the theory of action for "injury to property" to injury caused "by" an intoxicated person. 51 Ill. B.J. 810, 811 (1963); *Hernandez v. Diaz*, 31 Ill. 2d 393, 396-97.

We are not saying that expenditures made by a wife on behalf of a husband injured by his own intoxication are noncompensible, —that would be contrary to the result in *Shepherd v. Marsaglia* (a "by" count, page 382). We are saying that the remedy for injury to property must be based upon injury "by" an intoxicated person.

The judgment as to Count II is affirmed.

Reversed as to Count I and remanded for a new trial; affirmed as to Count II.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.